THE PEOPLE *ex rel.* L. W. Faulkner

*v.*

MARY B. HARRIS *et al.*

*Opinion filed June 16, 1903.*

1. MANDAMUS—*citizen may insist upon performance by public officers of duty to public.* It is *prima facie* the duty of the mayor and council to keep the streets of a city free from obstructions, for the benefit of the public, and the performance of such duty may be compelled by a citizen through *mandamus* without showing that he has any legal interest in the suit.

2. SAME—*entire public need not join in complaint.* In a proceeding for *mandamus* to compel public officers to discharge a duty to the public, the entire public need not join in the complaint but may speak through one of its citizens.

3. MUNICIPAL CORPORATIONS—*city is required to keep streets clear of obstructions.* While the legislature has vested in cities the power to lay out, open, alter and vacate streets and to regulate their use, yet it has also imposed upon them the duty of preventing and removing encroachments upon the same.

4. SAME—*city has no power to authorize buildings to project in street.* A bay window extending eighteen inches into the street is an encroachment upon such street which cannot be justified under authority of an ordinance permitting its construction, since the city has no power to make such concession as against the public.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

This is a petition for *mandamus*, filed by the relator, L. W. Faulkner, in the circuit court of Champaign county, Illinois, against Mary B. Harris, Newton M. Harris, her husband, and the mayor and aldermen of the city of Champaign. The petition sets up, in substance, the following facts: That the city of Champaign is a municipal corporation, and as such has charge of and is in possession of all the public streets and alleys within said city, and that it is the duty of said city to prevent and remove encroachments and obstructions from the same; that the law and the city ordinances of said city prohibit encroachments or obstructions from being placed

or maintained upon any street, alley or sidewalk by any person. The petition sets out *in hæc verba* sections 250, 251, 252 and 253 of the ordinances of said city. Section 250 prohibits any erection or enclosure encroaching, in whole or in part, on any street, alley or sidewalk, under a penalty of $20, and an additional penalty of $3 for each day the same is maintained. Section 252 provides for a penalty upon the owner for a failure to remove obstructions after notice. Section 253 provides that the mayor, chief of police or superintendent of streets shall cause such obstructions to be removed, and provides for the collection of the cost of removal and for the prosecution of those who violate section 250. The petition avers that it is the duty of the city of Champaign, through its mayor and aldermen, to keep and maintain all streets, alleys and sidewalks clear and free from encroachments and obstructions, etc., and avers that the city of Champaign, through its mayor and aldermen, has not performed its duty in that behalf; that the petitioner is the owner of and possessed of property in said city and is a citizen thereof, and that Mary B. Harris owns and occupies, by tenant, a lot, with a building thereon, adjoining the petitioner's lot, upon which buildings were built up to the street line on Neil street; that on the first day of January, 1901, the said Mary B. Harris built a certain erection or enclosure, commonly called a bay window, which was so built as to become attached to and made a part of the building owned by said Harris at No. 61 North Neil street, in said city, and which window was so built and erected as to encroach upon the sidewalk aforesaid without any lawful authority, which enclosure said Harris still maintains in and upon the sidewalk, to the detriment of the public and annoyance and great damage of the petitioner, although the said Harrises and the mayor and city aldermen were notified to remove the same or to cause the same to be removed, (copies of the notices and the return of service being set out in full);

that the said enclosure is a detriment to the title, use and enjoyment of the petitioner. The petitioner prays writ of *mandamus,* directed to the mayor and aldermen, Mary B. Harris and Newton M. Harris, to remove said obstruction, etc.

Separate answers were filed to said petition. The answers filed by respondents admit all the material allegations of the bill, except it is denied that the projection extends into the street beyond eighteen inches and that it was any obstruction to the street; deny that relator is injured by said structure, and claim the respondents' right to erect and maintain the same by virtue of section 261 of the ordinance of said city, which section is as follows: "No steps, platform or other fixtures shall be built to extend into or upon any sidewalk or alley more than three feet, and all steps encroaching upon any sidewalk or alley, and leading to the upper story of any building, shall be securely suspended; nor shall any open cellar-way or basement or basement-way extend into or upon any sidewalk or alley more than three feet, and shall be well protected and secured with a substantial railing around the same; nor shall any closed cellar-way or basement-way extend above the grade of the sidewalk. No window shall extend upon any sidewalk more than eighteen inches, and all cellar windows and coalholes placed in any sidewalk or alley shall be well secured by iron gratings, or otherwise laid even with the grade of the sidewalk or alley. Whoever shall violate or shall fail to comply with the requirements of this section shall be subject to a penalty of $3," etc.

The relator filed both general and special demurrers to the answers of respondents, which demurrers were overruled. The relator stood by his demurrers and the petition was dismissed, and he prosecutes this writ of error to this court. All the material facts are fully set forth, so that they may be admitted or traversed. They are by the demurrers admitted to be true.

THOMAS J. SMITH, and RAY & DOBBINS, for plaintiff in error.

F. B. HAMILL, and GERE & PHILBRICK, for defendants in error:

For obstructions to streets causing no special injury to an individual the public alone can complain. *Barrows* v. *Sycamore*, 150 Ill. 595; *McDonald* v. *English*, 85 id. 232.

In all cases, to warrant a recovery, it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage. *Barrows* v. *Sycamore*, 150 Ill. 595; *Smith* v. *McDowell*, 148 id. 68.

Many things may be authorized by legislative or proper municipal authority which without such authority would be nuisances, but being so authorized, so far as regards the public, they are lawful, though they may, to a greater or less extent, interfere with the free and entire use of the street. *McDonald* v. *English*, 85 Ill. 232.

A party applying for *mandamus* must show, first, that he has a clear legal right to have the thing which is asked for, done; second, that it is the clear legal duty of the party sought to be coerced to do the thing he is called upon to do. *People* v. *Supervisors*, 125 Ill. 334; *Railroad Co.* v. *Suffern*, 129 id. 281.

The use and regulation of the sidewalks are subject to the control of the city council. The owner of the adjoining property, by consent, may use the space under the sidewalk, (*Gridley* v. *Bloomington*, 68 Ill. 50; *McCarthy* v. *Syracuse*, 46 N. Y. 194;) and may maintain stone steps extending into the sidewalk over three feet. *McDonald* v. *English*, 85 Ill. 232; *Barrows* v. *Sycamore*, 150 id. 595.

Abutters have all rights to the use of a street that belong to the general public, and also rights not possessed by the public. 24 Am. & Eng. Ency. of Law, 34, 35.

Mr. JUSTICE RICKS delivered the opinion of the court:

The question presented for our consideration is the determination of the law on the admitted facts as above set forth.

It is argued by defendants in error that the relator had no right to the writ of *mandamus;* that to entitle him to the relief prayed he must show some special damage other than that suffered by the public in general, and they cite the case of *McDonald* v. *English*, 85 Ill. 232, and rely upon this case, to a great extent, to sustain their answer. That was an action on the case for maintaining a public nuisance, the facts being, that appellee built, fronting on the street, by the side of appellant's build-ing, a stone step of the height of two feet and four inches and extending into the sidewalk in front of the building three feet and seven inches. Appellant claimed that the obstruction interfered with the access to his building and brought his action for damages. The appellee in-troduced an ordinance in evidence which was almost identical with the ordinance in question, but no ques-tion was raised as to the validity of the ordinance. The introduction of it was objected to by appellant. This court did not approve of the ordinance, but said that any effect it could have had on the jury was in appellant's favor, since the only thing it tended to prove was that the obstruction was unauthorized, as it extended into the sidewalk beyond the limit prescribed by the ordinance, and at page 236 we said: "We regard the rule well set-tled that for any obstruction to streets, not resulting in special injury to the individual, the public, only, can complain," and held that, inasmuch as appellant sus-tained no special injury, he could not recover. Other cases cited by defendants in error are of similar char-acter and have no application to the questions here in-volved. In this case the individual is not undertaking to recover damages, nor can it be said that it is an individ-ual complaining, but it is the public complaining through

one of its citizens. In a proceeding for *mandamus* to compel public officers to perform a duty to the public it is not necessary that the entire public join in the complaint, but they may speak or interfere through one of their citizens, the people being the real party. Nor is it necessary, in this kind of proceeding, for a relator to show that he has any legal interest in the result of the suit, as it is *prima facie* the duty of the mayor and city council to keep the streets free from all obstructions, and the power is granted to be exercised for the public benefit, and its execution can be insisted on as a duty. (*Hall* v. *People ex rel.* 57 Ill. 307.) In this case the act to be performed by the defendants in error is a duty in which the people of the whole State are interested, and no doubt is entertained of the right of any citizen of the city to become a relator and institute this proceeding. It is therefore evident that the relator, as a citizen of Champaign, was a proper person to institute this proceeding. (2 Smith on Mun. Corp. 1601-1604; High on Ex. Legal Rem. 431; *County of Pike* v. *People ex rel.* 11 Ill. 202; *City of Ottawa* v. *People*, 48 id. 233.) In the case of *County of Pike* v. *People ex rel. supra*, the same question was raised in a *mandamus* proceeding, touching the authority of any person who is a citizen to institute the proceeding, and we there said (p. 208): "Where the object is the enforcement of a public right the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested, as a citizen, in having the laws executed and the right in question enforced. * * * The object of the suit is not a matter of individual interest, but of public concern. Any citizen of the county, especially of the locality interested in having the improvement prosecuted, could become the relator and obtain the *mandamus*."

The main question arising in this case, and the only one that we think need receive any special attention, relates to the power of the city to grant, by ordinance

or otherwise, the privileges to the property owner provided for by section 261 of its ordinance, as set out in the answers of defendants in error, and under which they attempt to justify. In their answers defendants in error admit that the sections set out in the petition are a part of the body of the ordinances of said city and are in force, but say that they must be considered together with section 261, which they set out. It will first be noticed that this section 261 does not purport to give authority to any one to do anything, but only inhibits certain things therein specified being done under a penalty. It does not, in effect, say to the citizens that they are authorized by city authority to build steps, platforms and other fixtures three feet into the street or extend windows eighteen inches into the street, but that if any step, platform or other fixture be extended into the street more than three feet or any window be extended into the street more than eighteen inches, the person who shall place or extend the same shall be subject to a penalty, and, as we think, is very different from a general ordinance of the city which contained a provision that all the property owners might build such structures into the street to the extent of the distance named in the ordinance. But whether that view of it be tenable or controlling, we will treat the ordinance, for the purpose of our consideration, as defendants in error have done, as one supposedly giving authority to extend a window into the street eighteen inches.

Since 1845 our statute has declared it to be a public nuisance "to obstruct or encroach upon public highways, private ways, streets, alleys, commons, landing places, and ways to burying places." (Starr & Cur. Stat. 1896, chap. 38, sec. 221, par. 5.) And while the legislature has vested in cities the power to lay out, establish, open, alter and vacate streets, and to regulate the use of the same, it also imposed upon them the duty to prevent and remove encroachments or obstructions upon the same. (Starr & Cur. Stat. 1896, chap. 24, par. 63, p. 694.) Defend-

ants in error admit that defendant in error Harris constructed and extended into the street a bay window to the extent of eighteen inches and that said window is about fifteen feet in width. Thus the questions are presented, does the projection into the street constitute a purpresture within the meaning of the law, and is it a nuisance, and if it is, can the city, by ordinance, authorize the maintenance of such nuisance by the citizens for private uses or purposes.

When a public highway is once established all the beneficial uses of it vest in and devolve upon the public, and where, as in incorporated cities, the title to the streets is vested in the municipality, they are nevertheless charged with the public right. In fact, the city could have no authority to accept public streets upon any other conditions than that they should be for public use, and what is meant by public use is that the public shall have the uninterrupted, unimpeded and unobstructed use of every portion and part of such public highway,—not only that they may use the ground or foundation to travel upon, (which right is co-extensive with every inch or foot of it,) but that they may enjoy the air, light and rainfall as well upon every portion of it. In *Field* v. *Barling*, 149 Ill. 556, on page 565 we said: "Before Holden Place was dedicated to the public as a street, the title of the United States, the original proprietor, was not confined to the surface of the ground, but its title extended upward, embracing the light and air as well as the soil, and the dedication of the strip of land for a public street embraced not only the surface of the ground, but the light and air above, and an individual has no more right to obstruct the light and air above the street than he has to obstruct the surface of the soil. In *Barnett* v. *Johnson*, 15 N. J. Eq. 481, where it was proposed to obstruct light and air over ground dedicated to the public, it is said: 'When the strip of land is declared a public highway, the adjoining owner has the right to light and

air from it. The column of light and air above the road-bed, whether of land or water, is as much a part of the highway as the road-bed itself. Take them away and there would be left no public passage. By its being declared a highway by the sovereign power, the light and air above it become again the common property of all, which all may breathe and use whenever they may legally touch it, whether in the road or along its sides. * * * When cities and villages have been built up along a public highway, the right to light and air from it becomes vested, and even the legislature would have no more right to deprive them [abutting owners] of it without compensation than they would have to draw off the water from a navigable stream.'" Again, in *Pennsylvania Co.* v. *City of Chicago*, 181 Ill. 289, we said (p. 296): "The title of the streets is vested in the city, and it has the conservation, control, management and supervision of such trust property, and it is its duty to defend and protect the title to such trust estate. The city has no power or authority to grant the exclusive use of its streets to any private person or for any private purposes, but must hold and control the possession exclusively for public use, for purposes of travel and the like. * * * The rule is, that all public highways, from side to side and from end to end, are held for the use of the public, and no other safe rule can be adopted." Then, with the admission of defendants in error in the record that they have built a structure fifteen feet across and eighteen inches out into the street, their averment that the relator is not injured thereby or the public travel is not obstructed or public use interfered with is but their conclusion of law, and was entitled to no consideration in considering the merits of their answer. (*Hibbard & Co.* v. *City of Chicago*, 173 Ill. 91.) In the latter case we said (p. 99): "The right of the public to the exclusive use of the streets for public purposes is inconsistent with the right of a private citizen to encroach thereon by the erection of a permanent

structure. The streets are held in trust by the municipality, and this fact prevents the municipality from authorizing any encroachment on or obstruction of them by such structures. The mere consent of the city council, by resolution or order, gives no vested right. * * * The averment that the awning so erected does not injure or obstruct any person does not change the case. The sole question to be determined is, is it an encroachment on the street of the city, and if so, it is a purpresture."

Mr. Elliott, in his work on Roads and Streets, uses the following language (p. 478): "Any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance *per se*, and may be abated, notwithstanding space is left for the passage of the public. This is the only safe rule, for if one person can permanently use a highway for his own private purposes, so may all; and if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without becoming a nuisance there would be no certainty in the law, and what was at first a matter of small consequence would soon become a burden, not only to adjoining owners, but to all the tax-payers and the traveling public as well. Thus expediency forbids any other rule. But even if it did not, the rule is well founded in principle, for it is well settled that 'the public are entitled not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler,' and if this be true it necessarily follows that there can be no rightful permanent use of the way for private purposes."

In the case of *Reimer's Appeal*, 100 Pa. St. 182, it was held that a bay window in the second story of a city house, sixteen feet above the sidewalk and projecting three and one-half feet beyond the building line, was a public nuisance, which could not be justified by ordinance and its construction could be enjoined by the public. To

the same effect are *City of Alton* v. *Illinois Transportation Co.* 12 Ill. 38; *City of Quincy* v. *Jones,* 76 id. 231; *Cicero Lumber Co.* v. *Town of Cicero,* 176 id. 9; *Snyder* v. *City of Mt. Pulaski,* id. 397. Quoting from *Snyder* v. *City of Mt. Pulaski, supra,* we said (p. 402): "The streets of a city are dedicated for public use, and for these purposes the city council may improve and control them and adopt needful rules for their management and use. But that body has no power to alien or otherwise encumber such streets so long as they are public streets, but must hold them in trust for public uses only, and hence no easement or right therein not of a public character can be granted by a municipality or acquired by any individual or corporation for exclusive private use to the exclusion of the public. * * * A permanent encroachment upon public streets for a private use is a purpresture, and is in law a nuisance. * * * Such permission to so use the street is not binding upon the city and is not irrevocable. The municipality having no power to grant such permanent use, there can be no estoppel against it from requiring the street to be open in its entirety, because no estoppel can arise from an act of the municipal authorities done without authority of law."

If this ordinance is to be upheld, and is to be construed as conferring power upon those citizens owning properties along the line of the streets to build steps out in front of each property three feet, aerial ways and stairways three feet, windows and other projections eighteen inches, pray, for whose benefit will we say these things are allowed to be done? Can it be said that such structures are of benefit to the hundreds or thousands, as the case may be, who do not own or have any interest in those homes or properties, and yet who have as much right to use the street in all its dimensions as do those who reside upon it? Can it be other than a mere private use or a use for private purposes? It matters not how many persons may build encroachments upon the streets

under such supposed ordinance, it would still be a private use and for private purposes, in which the public could have no interest and by which the public may be greatly annoyed and inconvenienced. If it be said that city authorities can, by ordinance or otherwise, permit the erection and maintenance of a structure extending three feet or eighteen inches into the street, then where shall we say is the limit? If they may deprive the citizens of a portion of the street, then what portion? And if it be said that it shall only be that portion that does not interfere with public travel, then must each obstruction and extension be left as an open question, to be determined in each case, as a matter of fact, whether there was an obstruction to travel and public use? If bay windows may be authorized to be extended into the street eighteen inches when near the ground, then why may not cities authorize property holders living opposite each other or property holders owning properties on each side of the street to cover the entire street, so long as they shall place their projections and obstructions high enough that the tallest man in the community, or the highest wagon or the biggest load that may be conceived of, may pass readily? It seems to us the very suggestion carries with it its own answer, and that there is no safe field of speculation other than to keep within the limits placed by the books, by saying that the streets in their entirety are public properties exclusively for public use, and that they, or any part of them, cannot be devoted exclusively to private purposes or private use.

With this law before us and with the views that we entertain upon the subject, as expressed in this opinion, we hold the ordinance relied on by defendants in error invalid, and it becomes our duty to reverse the judgment of the circuit court of Champaign county, and remand this cause to that court for other and further proceedings not inconsistent with this opinion.

*Reversed and remanded.*