(No. 33374.— )

CATHERINE BULLOCK *et al.*, Appellants, *vs.* THE CITY OF EVANSTON *et al.*, Appellees.

*Opinion filed December 20, 1954—Rehearing denied Feb. 15, 1955.*

PHILIP R. TOOMIN, of Chicago, for appellants.

JOHNSTON, THOMPSON, RAYMOND & MAYER, of Chicago, and REX A. BULLINGER, Corporation Counsel, of Evanston, (FLOYD E. THOMPSON, and PRENTICE H. MARSHALL, of counsel,) for appellees.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

This appeal comes here direct from the circuit court of Cook County where a zoning variation ordinance was held to be valid. A complaint for a declaratory judgment was filed by ten occupants of single-family residences in the city of Evanston challenging the permission granted the General Finance Corporation to build an office building on a tract of land consisting of two and one-half acres, located in an area that is more or less residential in character. The suit joined the municipality, its building commissioner and the General Finance Corporation as defendants. It sought a declaration of invalidity of the variation zoning ordinance and injunctive relief against the threatened commercial use of the subject property.

The complaint averred that the defendant General Finance Corporation was the owner of the involved premises, which consisted of two parcels of land, parcel A being at the northwest corner of Central Street and Asbury Avenue, and parcel B adjoining it on the west. There was a frontage on Central Avenue, which street runs east and west, of 370 feet, and on Asbury Avenue, which runs north and south, of 326 feet, extending north to Chancellor Street, which street establishes the northern boundary line of instant property. The complaint further alleges that the municipality's ordinance of 1940 zoned the Central Street frontage in a "D" multiple-family district, to a depth of 163 feet, while the remaining 163 feet, fronting on Chancellor Street, was placed in an "A" single-family zone. This same zoning pattern was followed for the north side of Central in the two blocks westward from Asbury, and for the block extending eastward from Asbury to Bryant Avenue. In the two previous zoning ordinances, this same area was zoned for commercial uses. The General Finance Corporation tract is approximately 130 feet east of the Northwestern University athletic field, which includes

Dyche Stadium and McGaw Memorial Hall. This 130-foot strip which separates them runs four blocks north from Central Street to Isabella Street, the northern boundary line of Evanston, and is given a "D" multiple-family zone. The athletic field has been continuously zoned since 1921 in an "A" district, and the frontage along the south side of Central Street in the three blocks from Asland to Bryant is zoned to a depth of 125 feet as "D" multiple-dwelling. With the foregoing exceptions, and with the exception of several lots at the southeast corner of Asbury and Isabella, zoned "D' two-family, all of the remainder of the area bounded by Lincoln on the south (two blocks south of Central), Ashland on the west (two blocks west of Asbury), Isabella on the north (four blocks north of Central) and Bryant on the east (one block east of Asbury) is zoned in the "A" single-family district.

The complaint further alleged that all of the land within the foregoing boundaries is being used in accordance with its zoning, except for three parcels devoted to legal non-conforming uses: (a) the southeast corner of the subject property on which a gas filling station, occupying a space 100 ft. x. 100 ft. has been conducted for many years; (b) the southeast corner of the adjoining block to the east on which there is in operation the terminal and service garage of the Evanston Bus Company, and (c) a series of four small retail stores on the ground floor of the large apartment building at the southeast corner of Central Street and Jackson Avenue, a block west of the subject premises.

With regard to the uses of the land surrounding the subject property, the complaint further averred and the proof tends to sustain the following:

(a) The property along Asbury on both sides of the street running north from Chancellor, three blocks to the city limits, and intersecting streets, Livingston and Jenks, are built solidly with single-family residences.

(b) The strip of land approximately 130 feet in width, immediately west of parcel B, is unimproved a distance of three blocks to the north of Central Street, and the entire block immediately north thereof is occupied by a series of modern apartment buildings. To the west of said strip of land and said apartment buildings is the Northwestern University athletic field.

(c) Almost the entire four blocks of frontage in the square block bounded by Central, Jackson, Ashland and Lincoln are improved with single-family residences.

(d) The entire block on the south side of Central across from subject property and between Asbury and Jackson is improved with a series of three-story apartment buildings, except for two lots which are vacant. On the southeast corner of Jackson and Central is a large apartment building on the first floor of which are the four stores which are nonconforming commercial uses. All the rest of the frontage in the square block bounded by Central, Asbury, Rosalie and Jackson is improved with single-family dwellings.

(e) The east side of Asbury between Central and Rosalie (one block south of Central) is improved solidly with single-family dwellings. To their immediate east is a row of apartment buildings fronting on Central Street and on the Evanston golf course property, which is opposite Bryant Avenue.

(f) The frontage of the block on the east side of Asbury Avenue between Central and Chancellor is vacant and unimproved. The adjoining property to the east is occupied by the terminal and garage of the Evanston Bus Company, as a nonconforming use. Said improvements are screened from the areas west and north by landscaping.

In the area bounded by Lincoln, Ashland, Isabella and Bryant, there are at least 125 single-family dwellings, many of them constructed in the last ten years, with values rang-

ing from $25,000 to $70,000. The record further indicates that the General Finance Corporation acquired legal title to parcel A on January 5, 1953, and to parcel B on January 7, 1953; that contemporaneously therewith the defendant caused to be filed, in the name of one of its grantors, an application with the Zoning Board of Appeals to permit a variation of use allowing it to construct on said tract a home office building, which would be an "F" commercial district use under the ordinance of 1940. This application was heard by the board on February 5, 1953, and resulted in a series of findings entered in June of that year. Briefly, the board determined that on the north half of the property in the "A" single-family zone, there was situated two dilapidated houses, while on the south half, the apartment zone, there was located the automobile service station; that the use of the property for residential purposes was adversely affected by its location, being subjected to the unfavorable influence of Dyche Stadium and the athletic field on the west, and the car barns of the Evanston Bus Company on the east; that for many years during which the south half of the property had been zoned for apartment use, there had been no development for that use; and that the north half of the property had not been a "satisfactory development" for residential use; that the construction of the proposed office building would, under the circumstances, be of general benefit to the community and in the public interest, and that the strict application of the zoning use regulations to the subject property would result in a hardship upon the property owners. Consequently, it was recommended that the variation be approved, conditioned upon the removal of the filling station, construction of the office building with certain setbacks from street lines, the installation of adequate parking space for employees, and the landscaping of the premises. The report of the Zoning Board of Appeals was adopted by the city council of Evanston and embodied in the variation ordinance of July 13, 1953.

The structure proposed to be built on the subject property is an office building which is intended to be used as the home office of the defendant corporation, not as a loan office dealing with the public or as a general commercial building. No part of it shall be closer than 40 feet from the north line of Central Street, nor 27 feet from the west line of Asbury Street, nor 77 feet from the south line of Chancellor Street, and in area it shall not exceed one quarter of the total area of the premises. The improvement contemplates that there would be parking space for at least 75 automobiles in the northwest section of the property, with access only from Central Street, and it shall be landscaped and maintained with trees and shrubs in such a manner as to enhance its appearance and screen the parking area from the view of the surrounding residential properties. The proposed building is principally a one-story structure containing a square footage of 27,000 feet, a considerably smaller second story containing 6,800 square feet and a still smaller third story containing 2,000 square feet. All portions of the building facing either Central Street or Asbury Avenue will be finished in either Crab Orchard or Lanon stone. The entire premises will be landscaped so as to give the appearance of a park.

The complaint charges that this variation ordinance was not adopted in proper exercise of the police power, nor was it to promote the general welfare, but purely in deference to the desire of the principal defendant to use the premises for its business activities; that such a commercial construction in a residential zone would increase congestion of the streets by auto traffic, as well as the hazard of fire; and that it would destroy the quiet of a residential community, and cause its character to change, thus diminishing property values of those owning residences in the area, all without due process and just compensation. The variation ordinance was also condemned in the complaint as amounting to spot zoning, as being unreasonable

and discriminatory, as being an unauthorized exercise of the police power and void on constitutional grounds, as being violative of sections 2 and 13 of article II of the State constitution, and of the fourteenth amendment to the Federal constitution, and as being legislation having no relation to the public health, safety, comfort, morals and general welfare.

To the plaintiffs' complaint there were filed the answers of the city of Evanston and Edwin M. Goodman, building commissioner, and The General Finance Corporation. In the answer of the General Finance Corporation it was alleged that it had contracted for the purchase of subject property and deeds were deposited in escrow to be delivered to it when the tract of land had been rezoned to permit its use for an office building; that to accomplish such rezoning it joined with Sarah A. Fancher, one of the grantors, in an application to the Zoning Board of Appeals to permit a variation use of the tract from residential to commercial. In its answer it averred that the uses permitted by the zoning ordinance of 1940 in the "A" single-family dwelling district are illogical and capricious; that the ordinance permits uses which cannot be called residential; and that the attempted classification as applied to the subject property bears no reasonable relation to the public health, safety or welfare and is therefore unconstitutional and void and constitutes the taking of property in violation of Federal and State constitutions.

After all pleadings had been filed the cause was referred to a master in chancery to conduct a hearing on the issues and report his conclusions of fact and law. Following extensive hearings, the master found the issues in favor of the defendants and recommended a decree dismissing the cause for want of equity. It can be fairly stated that in the 700 pages of proof adduced in the case, there is very little conflict. The master found that there was no merit in plaintiffs' contention that the zoning change under attack

would increase the hazards of traffic in the vicinity. He further found that there was no convincing evidence of any diminution of value which the proposed office building would cause to properties in the area and that the variation order was not arbitrary, capricious or unreasonable, or inconsistent with the general zoning scheme of Evanston. Also he held that the difference between the value of the principal defendant's property under the commercial zoning as contrasted to the apartment zoning was substantial; that this difference amounts to confiscation of property; and, therefore, the board's finding of hardship was justified.

The court handed down an opinion after hearing arguments on exceptions to the master's report. In this opinion, the court disagreed with the master's finding of hardship, and came to the conclusion that the evidence showed the subject property might well be used for residential purposes without economic loss. However, the court felt that since the legislative body of Evanston had decided otherwise, it could not say such action was capricious or unreasonable, hence the rule of fair debatability was applicable, and sustained the master's report in all respects, entered a decree dismissing the complaint for want of equity and entered judgment against plaintiffs for the taxed costs. The court certified the validity of a municipal ordinance is involved in these proceedings, and that the public interest requires a direct appeal to the Supreme Court.

There is a conflict in the opinion of the neighborhood as to the desirability of the defendant corporation's project. The plaintiffs and members of the North Evanston Improvement Association, whom they represent in this suit and who live in this area, have declared themselves opposed to the project. Two of the plaintiffs, J. Russell McGee and Marion W. King, testified in opposition to the project. However, two individuals, Grant Roth and R. J. Penny, who live directly across the street from the property in question, testified that they are in favor of the project.

These witnesses were the most immediate neighbors of the proposed new office building.

Underlying the master's determination, the following controlling factors find an abundance of support in the record.

(1) The general trend in the history of Evanston in regard to Central Street has been one of increasing commercial use, especially on the north side thereof.

(2) There was no convincing evidence in the record that the value of plaintiffs' property nor any other property in the area would be diminished on account of the existence on the tract here involved of the home office building of the defendant corporation.

(3) On the two sides of Central Street, nonconforming commercial uses existed, including stores, and a bus terminal and garage. The property itself contains a nonconforming use, a filling station, that is much less desirable than the proposed use by the defendant corporation.

(4) The zoning of the property for multiple-family dwellings for a period of approximately thirteen years, with no attendant development of the property, would reasonably indicate the property as presently zoned was not conducive to such development.

(5) The presence of Dyche Stadium and the McGaw Memorial Hall, while they are "A" uses under the zoning ordinance of 1940, are not essentially in the category of a single-family dwelling which is the primary purpose for which the category was set up, and these facilities do tend to have some detrimental effect in that, on those occasions on which major events are held, there is much congestion, noise and confusion.

(6) The defendant corporation project would not increase the demand for certain governmental services that would necessarily increase, such as garbage disposal and other municipal services and utilities, if the property were to be used for multiple-family dwellings.

(7) Only two of the plaintiffs testified in support of the complaint, and they lived much farther away from the subject property than Roth and Penny who gave strong and persuasive reasons why they welcomed the office building.

The plaintiffs place great reliance upon the testimony of Irvin Blietz, a north shore builder. His plan of improvement was to get a variation of the zoning ordinance which would permit him to cover the tract with six unit row houses. This would more than double the intensity of land occupancy over the improvement permitted by the limited variation of use to the General Finance Corporation. Blietz had seen Central Street develop as a commercial thoroughfare over the past thirty years, and had built an apartment building and a six unit row house on the south side of Central Street nearly opposite the subject property within the past few years. Blietz said that in his opinion parcel A was worth $60,000 but only if the necessary variation of land use and intensity of land occupancy were made.

Richard L. Nelson, an expert testifying on behalf of plaintiffs, stated that it was his opinion that the change of use of the subject tract would have no adverse effect on the property south of the apartment buildings on the south side of Central Street. However, he was of the opinion that the proposed new use for administrative offices of General Finance Corporation would adversely affect the residential neighborhood to the north by increasing traffic and giving the area a commercial character. He admitted that the adverse effect to the north would diminish with distance from the subject tract and stated that the most seriously affected residential properties would be homes with frontage on Chancellor Street.

Significantly, R. J. Penny, who has lived in the second residence on the north side of Chancellor, west of Asbury, for the past thirteen years and within two blocks of this location for the last forty years, and Grant Roth, whose

residence is at the northwest corner of Chancellor and Asbury and who has had a long acquaintance with the area, testified that they have seen the subject property deteriorate from an agricultural use with two habitable farm dwellings on the south side of Chancellor to an unkempt and unsightly area with two dilapidated buildings, and had seen the Central Street frontage built up with apartment buildings immediately opposite the subject tract and with commercial establishments to the east and west. They have seen the old street car terminal one block east converted into a bus terminal and become very objectionable to the residential area, and the Northwestern University property to the west developed into a major athletic field which has brought a heavy concentration of traffic and parking all over the area. It was their opinion that the improvement of the subject tract as proposed by the General Finance Corporation will reduce the undesirable features of the area and will stabilize the community.

George S. Dalgety, defendants' expert, described the tract and the surrounding area, showing that Central Street is a semicommercial heavily travelled through street. He gave the opinion that the subject tract is characterized by the Central Street use and development and is not characterized by the residential section to the north, and stated that the improvement of the subject tract as proposed herein was for many reasons more desirable to the entire area, and particularly to the small residential area to the north of Chancellor Street, than an improvement which would place a large multiple-story apartment with its front on Central Street and its rear where it would be viewed from the residences to the north. He also testified that the proposed head office building improvement would create less congestion in the area and require less municipal service than the residential improvement permitted by the 1940 ordinance or the proposed row house development, and the proposed improvement would have a greater tax value and

thereby provide the public bodies with more tax revenues than the residential use.

Gordon T. Goethal, personnel manager and purchasing agent of General Finance Corporation, also testified for the defendants that the company is engaged in insurance, finance and loan businesses; that the bulding is to be used for general administrative home office purposes only; that no business will be tranacted with the public at this location; and that presently there are 203 employees in the general office.

A. A. Faulkner, Evanston traffic engineer, testified that the average daily traffic load on Central Street at Asbury is about 9000 vehicles, and on Asbury north of Central is about 800. Central Street has a 40-foot roadway with two lanes for moving traffic, and each lane is capable of carrying 1000 vehicles an hour. It was his opinion that 50 cars entering a parking lot on the subject property over a 15-minute period in the morning and leaving in the evening would make no appreciable increase in the traffic load on Central Street.

G. C. Bergslund, general manager of the Evanston Bus Company, testified that 380 buses pass in front of the subject property daily between 5:30 A.M. and 1:30 A.M.; that a bus passes the Central Asbury section every four and a half minutes during rush hours and every eight minutes in midday; and that there are 63 buses serviced at and operated from the garage terminal at Central and Bryant.

E. A. Nordstrum, manager of the Northwestern University athletic property, described the stadium and its seating capacity, stating that there are several hundred thousand people annually in attendance at various athletic contests, conferences, concerts and shows held in and around Dyche Stadium.

The burden is upon the plaintiffs to prove that they have suffered a special damage by reason of the variation of use granted by the challenged ordinance which is differ-

ent from that suffered by ·the public generally. All presumptions are in favor of the validity of the ordinance. (*Kinney* v. *City of Joliet,* 411 Ill. 289.) Another principle of law which is fundamental is that the question of whether a variation of use should be granted is primarily one for the municipal authorities, and the courts will not overrule the legislative decision where the question is fairly debatable and the action of the municipal authorities is not arbitrary and capricious.

There is the same presumption of validity in the enactment of a variation ordinance as there is in the original zoning ordinance. (*Kinney* v. *City of Joliet,* 411 Ill. 289, 292.) It is not proper for this court to constitute itself a zoning commission and substitute its judgment for that of the legislative body charged with the primary duty of determining when a variation use should be permitted. Our proper inquiry is whether the question is debatable. If there is room for honest difference of opinion, the courts will not disturb the legislative action. (*Downey* v. *Grimshaw,* 410 Ill. 21, 28; *Braden* v. *Much,* 403 Ill. 507, 515.) Whether the variation of use bears a proper relation to public safety, health and welfare is a question committed to the municipal authorities, and unless an abuse of discretion is clearly shown, the courts will not interfere. *Forbes* v. *Hubbard,* 348 Ill. 166.

There is no evidence that any developer would have paid as much as $75,000 for the tract prior to the challenged variation order. Even so, there would have been a loss to the owner of $50,000 or two fifths of the value of the property. There is no evidence in the record that the public safety, health and welfare demand such a confiscation of value, and the municipal authorities recognized that the owners might be able to compel a rezoning of the tract if the application for limited variation were not granted.

It is important to observe that no human habitation has been built on the subject tract or within three blocks east or west of it on the north side of Central in the past forty years, and there is no evidence that the property would ever have been developed for residential purposes under the 1940 zoning restrictions. The challenged ordinance reduces the permitted intensity of land occupancy and requires appropriate landscaping of the tract and screening of the office building and parking facilities from the residential area by heavy planting of shrubbery. The city council of Evanston envisioned an improvement that will be aesthetically satisfying to the neighborhood to the north—more so than the rear of a multiple-dwelling unit. A careful reading of the record in this case convinces us that the zoning authorities of Evanston could not possibly have reached any other conclusion than the one that is being attacked here.

In light of the foregoing, it is our opinion that the judgment entered herein should be and is affirmed.

*Judgment affirmed.*