NOTICE
Decision filed 10/12/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 170309

NO. 5-17-0309

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CEDARHURST OF BETHALTO REAL ESTATE, LLC, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) | No. 17-MR-118 |
| | ) | |
| THE VILLAGE OF BETHALTO, ILLINOIS; ALAN WINSLOW, in His Official Capacity as Mayor of the Village of Bethalto; GERALD BOURLAND, in His Official Capacity as Trustee of the Village of Bethalto; PERRY WITHERS, in His Official Capacity as Trustee of the Village of Bethalto; JEFF MULL, in His Official Capacity as Trustee of the Village of Bethalto; GARY BOST, in His Official Capacity as Trustee of the Village of Bethalto; BRADY DUGGER, in His Official Capacity as Trustee of the Village of Bethalto; and DAN McRAE, in His Official Capacity as Trustee of the Village of Bethalto, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Philip B. Alfeld, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Cates and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    Cedarhurst of Bethalto Real Estate, LLC (Cedarhurst), is a corporate entity located in the Village of Bethalto (Village) that operates a local residential nursing home. Unique Homes

1

Properties, Inc. (Unique Homes), had plans to develop a new senior citizen residential, nursing, and memory care facility in Bethalto. Cedarhurst filed suit against the Village and its mayor and trustees (collectively referred to as defendants in this opinion), alleging that the defendants must regulate development near the St. Louis Regional Airport and that the permission defendants granted Unique Homes violates the Village's 2000 comprehensive plan because the tract of land is too geographically close to the airport. Defendants filed a motion to dismiss Cedarhurst's complaint, alleging that Cedarhurst had no standing. On July 20, 2017, the trial court granted defendants' motion. In its detailed order, the court found that because Cedarhurst was complaining about a third party's planned land usage, it was required to plead direct personal special injury or damages. Cedarhurst was not able to plead personal damages connected to Unique Homes' planned development, and so the court held that it lacked standing. For the reasons that follow in this opinion, we affirm the trial court's order dismissing Cedarhurst's complaint.

¶ 2                                    FACTS

¶ 3     Cedarhurst alleges that Unique Homes is constructing a senior citizen residential and memory care facility in the Village and claims that the proposed site is in the flight path of the main runway of the St. Louis Regional Airport. The tract allegedly abuts the airport's runway protection zone. Cedarhurst cites to the Village's 2000 comprehensive plan, which Cedarhurst alleges required the Village to create an airport overlay district. The 2000 comprehensive plan serves as "a general plan to guide the future development and redevelopment of [Bethalto]" and is to be utilized by the Village trustees in reviewing all applications for development. Specifically, the 2000 comprehensive plan contains the following statement:

2

"The creation of an airport overlay zoning district is perhaps the best technique to encourage compatible land uses around the airport. \*\*\* The FAA guidelines for land use compatibility are used to determine the permitted land uses and related development standards within the overlay district. Land uses that are sensitive to certain noise levels are not permitted within the overlay district, or portions thereof, in order to protect the public health, safety and welfare."

The defendants adopted a comprehensive plan in 2014 that no longer contains the quoted provision.

¶ 4    Cedarhurst asked for a meeting with the Village mayor in February 2017 to express its concerns that the planned location for the Unique Homes retirement facility "would be putting seniors' health and safety at risk." In addition, Cedarhurst complained that Unique Homes "was unfairly manipulating the development approval process—through political clout or otherwise."

¶ 5    Ultimately, on March 31, 2017, Cedarhurst filed its complaint seeking declaratory, *mandamus*, and injunctive relief. In its declaratory judgment and *mandamus* counts, Cedarhurst asked the trial court, in part, to order the Village to comply with its 2000 comprehensive plan, mandate that the Village create an airport overlay district, and prohibit the Village from taking any action on Unique Homes' development applications. Cedarhurst also sought injunctive relief, asking the court to enjoin the defendants from allowing Unique Homes to proceed with its proposed senior living facility development.

¶ 6    The defendants filed a motion to dismiss, arguing that Cedarhurst lacked standing to bring any claim because it did not plead special injury or individualized harm and, alternatively, that there was no actual controversy between the parties in this case. More specifically, the defendants asserted that the Village had no obligation to create the airport overlay district. The

defendants explained that the 2000 comprehensive plan was replaced by the 2014 plan, and thus Cedarhurst could not allege an actual controversy regarding the 2000 plan. Furthermore, the defendants stated that the plan was advisory in nature and did not constitute law, and thus the Village was under no obligation to implement any part of the plan. Finally, the defendants claimed that Cedarhurst had no interest in the alleged controversy because it had no personal claim, status, or right capable of being impacted by the development planned by Unique Homes.

¶ 7 The trial court granted the motion to dismiss on July 20, 2017. The court concluded that Cedarhurst lacked standing to complain about the use of someone else's property, as it did not and could not allege a special personal damage different from any potential damage that the general public might suffer. *Garner v. County of Du Page*, 8 Ill. 2d 155, 158-60, 133 N.E.2d 303, 304-05 (1956); *Bullock v. City of Evanston*, 5 Ill. 2d 22, 33-34, 123 N.E.2d 840, 846 (1954). In addition, the trial court found that even if Cedarhurst had standing to maintain this suit, the Village did not violate any ordinance that could result in a legitimate claim.

¶ 8 Cedarhurst timely filed its appeal from the trial court's order.

¶ 9 LAW AND ANALYSIS

¶ 10 Our review of this issue is *de novo*. The underlying motion denied by the trial court was based upon sections 2-615 and 2-619 of the Code of Civil Procedure, both of which mandate *de novo* review. 735 ILCS 5/2-615, 2-619 (West 2016); *Paul v. County of Ogle*, 2018 IL App (2d) 170696, ¶ 34, 103 N.E.3d 585 (review of ruling on section 2-615 motion to dismiss is *de novo*); *Glasgow v. Associated Banc-Corp*, 2012 IL App (2d) 111303, ¶ 11, 980 N.E.2d 785 (review of ruling on section 2-619 motion to dismiss is *de novo*). When ruling upon either a section 2-615 or section 2-619 motion to dismiss, the court should accept all well-pleaded facts in the complaint as true and make reasonable inferences from those facts in favor of the

4

nonmoving party. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740, 747 (2003).

¶ 11    Combined motions may be filed together but must be in separate parts pursuant to the two different sections of the Code of Civil Procedure utilized. 735 ILCS 5/2-619.1 (West 2016). Each section must contain the points or grounds upon which the argument to dismiss is based. *Id.* In a properly filed combined motion to dismiss, the court must first look to dismissal under section 2-619, which requires courts to view the complaint for its legal sufficiency in light of the raised defects, defenses, or other affirmative matters that may defeat or bar the claim. *Edelman, Combs & Latturner*, 338 Ill. App. 3d at 164.

¶ 12    Here, Cedarhurst and Unique Homes are in a similar line of business—senior residential homes. Cedarhurst claims that it filed this suit, in part, to protect the future residents of the Unique Homes development, as the planned development is located geographically close to a local regional airport. It alleges that the defendants have a nondiscretionary common law duty to protect community health and safety; that they must enforce all laws and ordinances prescribed by law; and that the 2000 comprehensive plan obligates the Village to regulate land use to ensure the health, public safety, and welfare of the community.

¶ 13    We first review the issue of Cedarhurst's standing to file its action against the defendants because the issue would be dispositive.

¶ 14    Cedarhurst was not obligated to establish its standing in its complaint. However, once the defendants raised standing as an affirmative defense in their motion to dismiss, the burden shifted to Cedarhurst to establish that it has standing. *Village of Willow Springs v. Village of Lemont*, 2016 IL App (1st) 152670, ¶ 29, 70 N.E.3d 210.

¶ 16    The doctrine of standing serves to bar persons who have no interest in a controversy from filing suit. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221, 720 N.E.2d 1034, 1039 (1999). Lack of standing is an "affirmative matter" that can be raised under section 2-619(a)(9) of the Code of Civil Procedure. 735 ILCS 5/2-619(a)(9) (West 2016); *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494, 524 N.E.2d 561, 575 (1988).

¶ 17    This case is distinctive in that Cedarhurst is complaining about actions and/or inactions by the defendants about property being developed by a third party, Unique Homes. The supreme court addressed the issue of standing in *Garner v. County of Du Page*, 8 Ill. 2d 155, a case structurally similar to this one and cited by the trial court as authoritative. In *Garner*, a taxpayer filed a suit against the county, seeking a declaration about the constitutionality of the county's amendment to a zoning ordinance and also seeking injunctive relief. *Id.* at 157. The Du Page County Board had unanimously voted to amend an ordinance that reclassified a 120-acre tract of land from farming to industrial. *Id.* Taxpayers, who were residents of Du Page County and owners of real estate in and around Naperville, filed suit. *Id.* The taxpayers alleged that their real estate was contiguous and in the general vicinity of the rezoned tract. *Id.* They argued that the rezoning was unreasonable, arbitrary, and capricious; that the rezoning would result in decreased property values; and that the rezoning was detrimental to the welfare of Naperville because there would likely be an increase in population due to the planned industrial use and the increase would overtax Naperville's facilities for housing, education, water, sewage disposal, and traffic. *Id.* at 157-58. The facts included in the complaint revealed that none of the concerned taxpayers' properties were contiguous to or in proximity of the rezoned tract. *Id.* at 158. The only evidence about property values was provided by a realtor who concluded that the rezoned tract was too

distant from the taxpayers' properties to affect a value change. *Id.* To establish standing in a case where the complaining party alleges that corporate authorities have wrongfully allowed a use on someone else's property, one "has the burden of proving that he has suffered a special damage by reason of such use which differs from that suffered by the general public." *Id.* at 158-59. The supreme court concluded that if the rezoning posed some sort of threat to the complaining taxpayers, the threat would be no different than that posed to the general public. *Id.* at 159-60. In support, the court quoted a New York court's opinion as follows:

> " 'As one may not assume the role of champion of a community to challenge public officers to meet him in courts of justice to defend their official acts, *** so one having only a general interest may not adopt the part of an advocate of municipal welfare *** to promote a judicial enforcement or interpretation of zoning regulations.' " *Id.* at 160 (quoting *Blumberg v. Hill*, 119 N.Y.S.2d 855, 857 (N.Y. Sup. Ct. 1953)).

See also *Swain v. County of Winnebago*, 111 Ill. App. 2d 458, 250 N.E.2d 439 (1969) (holding that Swain, individually as owner of a shoe store in downtown Rockford, and Central City Council, a downtown business council, were unable to establish that they would personally suffer special damage (alleged increase of vehicular traffic and overtaxed area services) as a result of Winnebago County's planned rezoning of property to permit development of a regional shopping center, and therefore they lacked standing to proceed with the declaratory judgment suit); *Bullock*, 5 Ill. 2d at 33-34 (holding that city residents failed to prove that they suffered a special damage by the city's granted variation of use for a tract of land from single-family residential to commercial in an area with no development in the past 40 years); *Koehler v. A Century of Progress*, 354 Ill. 347, 349-50, 188 N.E. 445, 446 (1933) (holding that the

complaining party lacked standing to seek injunctive relief to stop the use of public funds for a Chicago exposition because she had no special injury).

¶ 18 Our supreme court provided additional guidance on the requirements of standing in the case of *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462. In *Greer*, a complaint was filed by neighborhood residents who owned property near a planned rehabilitation development housing project for low income tenants in Chicago. *Id.* at 470. At issue was the legitimacy of mortgage funding by the Illinois Housing Development Authority (IHDA). *Id.* The IHDA alleged that the plaintiffs lacked standing. *Id.* at 487. The court held that, provided that the complaining parties could establish "some injury in fact [whether actual or threatened] to a legally cognizable interest," then the parties established standing. *Id.* at 492 (citing *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d 243, 254, 483 N.E.2d 1263, 1268 (1985), and *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). The actual or threatened injury needs to be " 'distinct and palpable,' " " 'fairly traceable' " to the defendant's actions, and "substantially likely to be prevented or redressed by the grant of the requested relief." *Id.* at 492-93 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376 (1982) ("distinct and palpable") and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261 (1977) ("fairly traceable") and citing *Immigration & Naturalization Service v. Chadha*, 462 U.S. 919, 936 (1983) (substantial likelihood that if the relief is provided, the injury will be prevented or remedied)).

¶ 19 In deciding *Greer*, the supreme court did not mention or specifically overrule the *Garner* court's "special damages" requirement to establish standing. The court began with the principle that standing in Illinois requires "some injury in fact to a legally cognizable interest." *Id.* at 492 (citing *Glazewski*, 108 Ill. 2d at 254). The court then cited to several Illinois and United States Supreme Court cases to outline the precise meaning of "injury in fact to a legally cognizable

interest." *Id.* Based upon this careful analysis, we conclude that *Greer* explained and outlined what is required to establish standing and should be the standard used by courts.

¶ 20    While *Garner* and other similar cases required "special injuries" that are unique to the complaining party and different from what the general public would experience, we find common ground between those "special injuries" and the "injury in fact to a legally cognizable interest." In *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d at 254, the court did not rule on the standing issue but found that the plaintiffs, who alleged fraud against an insurance company, had no dealings with and had not purchased insurance from the defendant insurance company and, "therefore, have not alleged any actual injury in reliance on their conduct." Essentially, the court found that the plaintiffs had no personal injuries resulting from the alleged frauds committed by the insurance company. Like the "special injuries" in *Garner*, the *Glazewski* plaintiffs were faulted for not having any direct relationship and injuries with the defendant. Similarly, in *Glisson v. City of Marion*, 188 Ill. 2d at 222, a taxpayer filed suit against the municipality that constructed a dam and reservoir that allegedly violated the Illinois Endangered Species Protection Act (520 ILCS 10/1 *et seq.* (West 1998)) and resulted in the elimination of two species from the area. At issue was whether the taxpayer had standing to file a complaint for declaratory judgment and injunctive relief. *Glisson*, 188 Ill. 2d at 223. The supreme court concluded that the taxpayer did not have standing, as he did not have a legally cognizable interest based upon the constitution's right to a " 'healthful environment' " as that term was used in the Illinois Constitution. *Id.* at 231 (quoting Ill. Const. 1970, art. XI, § 2). The taxpayer also argued that he had standing as a naturalist who used the creek at issue for "food gathering, recreation, spiritual and educational activities, and on his lifestyle which he claim[ed] [was] 'dependant on' " the creek. *Id.* The court disagreed, stating "that a party cannot gain standing

9

merely through a self-proclaimed interest or concern about an issue, no matter how sincere." *Id.* (citing *Landmarks Preservation Council v. City of Chicago*, 125 Ill. 2d 164, 175, 531 N.E.2d 9, 13 (1988)). We conclude that the terms "legally cognizable interest" and "injury in fact to a legally cognizable interest" require a distinct injury to the complaining party, even though the use of the term "special injury" is no longer commonplace. The injury must be either actual or threatened and must be distinct and palpable. *Greer*, 122 Ill. 2d at 492-93. To establish standing, there needs to be a connection between the complaining party and the defendant involving an injury to a legally cognizable interest.

¶ 21    Cedarhurst filed its complaint seeking three different forms of relief: declaratory, injunctive, and *mandamus*. As the rules regarding each type of relief vary somewhat, we will address each separately.

¶ 22                             Declaratory Relief

¶ 23    To establish standing in a declaratory judgment suit, there must be an actual controversy between the parties. *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375, 362 N.E.2d 298, 300 (1977); *Greer*, 122 Ill. 2d at 493. An actual controversy is defined as being "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 376, 806 N.E.2d 1273, 1276 (2004); *Greer*, 122 Ill. 2d at 493. In addition, the party seeking declaratory relief must possess a personal claim, status, or right that could be affected if relief would be granted. *Greer*, 122 Ill. 2d at 493 (citing *Underground Contractors Ass'n*, 66 Ill. 2d at 375-76).

¶ 24    In this case, Cedarhurst cites to two supreme court cases as authority for all three forms of relief sought—*People ex rel. Faulkner v. Harris*, 203 Ill. 272, 67 N.E. 785 (1903), and *County*

10

*Commissioners of Pike County v. People ex rel. Metz*, 11 Ill. 202 (1849). The plaintiffs in both of these cases sought writs of *mandamus* to compel a public officer to take action on matters of public concern. *Faulkner*, 203 Ill. 272 (citizen allowed to proceed against the mayor and alderman of the city of Champaign who were allegedly shirking official duties mandated by ordinances to keep and maintain all streets, alleys, and sidewalks clear and free from encroachments and obstructions); *County Commissioners*, 11 Ill. 202 (Pike County received funds appropriated for public works but then diverted some of the money to the general fund, and although relator had no individual interest in mandating compliance with the specified appropriation, the court found that he could do so because the matter was of public concern in having the public works improvements completed). Essentially, both *mandamus* cases did not require the complaining party to have any personal interest in the case and held that it was enough that the subject matter of the claims was of public concern. *Faulkner*, 203 Ill. at 277; *County Commissioners*, 11 Ill. at 208. Although these two cases allow the complaining party to bring a claim about a public matter, the plaintiffs in both cases were pursuing a writ of *mandamus* requiring a public official to act. Even though the cases could have some application to Cedarhurst's *mandamus* count, nothing in these cases suggests application to declaratory judgment cases, and thus both cases are distinguishable.

¶ 25 Cedarhurst also cites to one case involving a declaratory judgment suit as authority. In the cited case, *Tanner v. Solomon*, 58 Ill. App. 2d 134, 135, 206 N.E.2d 528, 529 (1965), one member of a local fire and police board sought a declaratory judgment against the other members of the same board. The issue involved appointment of allegedly ineligible applicants to the police force. *Id.* The court ultimately concluded that the plaintiff did not have standing but stated in *dicta* that it had no problem in concluding that it was unnecessary for the plaintiff to have been

11

directly impacted by the appointments. *Id.* at 138. As the citation to this aspect of the case was not part of the court's holding, we do not find *Tanner* persuasive.

¶ 26 Cedarhurst makes no attempt to claim that it would be directly injured from the planned development of a competing residential facility, *i.e.*, it raises no actual or threatened injury that is distinct. Instead Cedarhurst raises safety concerns for the prospective new tenants of the planned development. Furthermore, Cedarhurst has no actual controversy with the defendants in that it does not allege that it possesses a personal claim, status, or right capable of being rectified if declaratory judgment was granted. *Greer*, 122 Ill. 2d at 493. The three cases Cedarhurst cites do not support its claim of standing. We find that the analysis in *Garner*, coupled with the specific definition of the injury required for standing in *Greer*, establishes that Cedarhurst does not have standing. As the supreme court in *Garner* stated, "[t]his case is not the normal one where an owner of land is complaining of restrictions placed upon its use, but is the comparatively rare case in which it is claimed that corporate authorities have wrongfully permitted a use on the property of someone else." *Garner*, 8 Ill. 2d at 158. Because the plaintiffs in *Garner* had no direct, personal injuries resulting from the rezoning of someone else's property, the court held that they did not have standing to complain. *Id.* at 159. Similarly, Cedarhurst has no direct personal injuries, *i.e.*, no injury in fact. *Id.* at 158-59; *Greer*, 122 Ill. 2d at 492. Cedarhurst's property is not located near the tract of land at issue, and any claimed violations cause no direct impact to Cedarhurst. Although Cedarhurst is a citizen of the Village, none of the problems and/or violations it claims would occur if the development is allowed to proceed have any direct link to or impact upon Cedarhurst. We affirm the trial court court's conclusion that Cedarhurst did not have standing to seek declaratory judgment against the defendants.

¶ 27                                    Injunctive Relief

¶ 28    To establish standing in a suit seeking injunctive relief, the complaining party must establish that he has a "clearly ascertainable right or interest which needs protection." *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.*, 143 Ill. App. 3d 285, 292, 492 N.E.2d 969, 974 (1986). The party must claim injury to a "substantive interest he possesses which is recognized by statute or common law." *Id.* (citing *Glazewski*, 108 Ill. 2d at 254). The injury must directly impact his property or rights and cannot be abstract. *Id.* "The doctrine is designed to insure that the courts are accessible to resolve actual controversies between parties and not address abstract questions, moot issues, or cases brought on behalf of others who may not desire judicial aid." *Id.* (citing *Illinois Municipal League v. Illinois State Labor Relations Board*, 140 Ill. App. 3d 592, 598, 488 N.E.2d 1040, 1044 (1986)).

¶ 29    Cedarhurst only cites to *Faulkner* and *County Commissioners* as authority for its claim that it has standing to seek an injunction against the defendants. Again, as both cases involved writs of *mandamus*, they are not authoritative on the issue of standing to seek injunctive relief. Here, Cedarhurst has not established a personally substantive interest recognized by statute or common law that must be protected. *Glazewski*, 108 Ill. 2d at 254; *Garner*, 8 Ill. 2d at 159. We affirm the trial court court's conclusion that Cedarhurst did not have standing to seek injunctive relief against the defendants.

¶ 30                                    *Mandamus*

¶ 31    To establish standing in a suit seeking a writ of *mandamus*, the complaining party must establish that there is a "sufficiently protectable interest pursuant to statute or common law which is alleged to be injured." *Hill v. Butler*, 107 Ill. App. 3d 721, 725, 437 N.E.2d 1307, 1311 (1982) (citing *Retail Liquor Dealers Protective Ass'n of Illinois v. Schreiber*, 382 Ill. 454, 459,

47 N.E.2d 462, 464 (1943)); see also *People ex rel. Cermak v. Emmerson*, 323 Ill. 561, 566, 154 N.E. 474, 476 (1926) (stating that a Cook County resident who was not affected by legislation regarding judicial nomination by party conventions in counties with fewer than 300,000 inhabitants "has no right to complain," but that he did have standing with respect to legislation regarding Cook County judicial nominations). The claim must be specific and cannot be abstract. *Hill*, 107 Ill. App. 3d at 725. More recently, in *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 16, 30 N.E.3d 468, the complaining citizen claimed that, as a lifelong Illinois resident, he had standing to bring his *mandamus* suit. In response, the court stated that the right of a citizen to bring a *mandamus* action against a public official does not exist in a vacuum. *Id.* " '*Mandamus* is an extraordinary remedy traditionally used to compel a public official to perform a purely ministerial duty.' " *Id.* (quoting *Bremen Community High School District No. 228 v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112177, ¶ 14, 981 N.E.2d 369). To establish the right to a writ of *mandamus*, the complaining party must establish the following: "(1) a clear, affirmative right to relief; (2) a clear duty of the public officer to act; and (3) clear authority in the public officer to comply." *Id.* The court concluded that the plaintiff's brief on appeal did not contain allegations supportive of standing because he did not allege a personal injury or legally cognizable interest. *Id.* ¶¶ 17-18.

¶ 32 Although there are situations where a complaining party is able to act for the public at large in seeking a writ of *mandamus* to compel some action by a public official or body as detailed in the two cases Cedarhurst cites, the facts in this case do not support Cedarhurst's request. *Faulkner*, 203 Ill. at 277; *County Commissioners*, 11 Ill. at 208. Both cases stand for the theory that a concerned citizen can seek a writ of *mandamus* to compel a public official to perform a ministerial act. But, that potential ability to obtain a writ is only possible if the

14

concerned citizen can also establish: "(1) a clear, affirmative right to relief; (2) a clear duty of the public officer to act; and (3) clear authority in the public officer to comply." *McCann*, 2015 IL App (1st) 141291, ¶ 16.

¶ 33    Cedarhurst is not able to establish that there is a sufficiently protectable interest pursuant to statute or common law that would be damaged because the defendants were not in violation of any zoning ordinance or comprehensive plan then in effect. The Illinois Municipal Code provides that an official comprehensive plan and any amendment or addition to the plan is only effective if it is formally adopted by the municipality's corporate authorities. 65 ILCS 5/11-12-6 (West 2016). Without the municipality's formal adoption, the plan is advisory only and "shall not be construed to regulate or control the use of private property in any way" unless a part of the comprehensive plan was implemented by a duly-enacted ordinance. *Id.* Cedarhurst contends that the mayor is in violation of his obligations to follow and enforce all laws and ordinances and to perform duties prescribed by law.[1] Specifically, Cedarhurst argues that the mayor did not enforce and follow the 2000 comprehensive plan, which obligated the evaluation of developments near the regional airport. However, the 2000 comprehensive plan is no longer valid, as a revised version was adopted in 2014. Although Cedarhurst acknowledges these facts, it still argues that the mayor should have complied with his "duties" pursuant to the 2000 version. Cedarhurst's argument lacks sound reasoning. The comprehensive plan is an advisory document and is not mandatory. Further, the 2000 comprehensive plan at issue is no longer in effect. We affirm the trial court's conclusion that Cedarhurst did not have standing to seek a writ of *mandamus* against the defendants.

---

[1]Cedarhurst does not appear to claim that the Village or any of the trustees is/are in violation of the cited ordinances and statutes.

15

¶ 34                                    CONCLUSION

¶ 35    Cedarhurst did not have standing to pursue its claims against the defendants. As this issue is dispositive, we do not reach the question of whether or not the defendants had a duty to act or whether Cedarhurst's pleadings set forth potential viable causes of action. To the extent that our analysis varies from that of the trial court, as our review is *de novo*, a reviewing court may affirm the trial court's decision on other grounds. *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 502, 520 N.E.2d 37, 39 (1988).

¶ 36    For the reasons stated in this opinion, we affirm the trial court's order dismissing Cedarhurst's complaint.


¶ 37    Affirmed.

2018 IL App (5th) 170309

NO. 5-17-0309

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| CEDARHURST OF BETHALTO REAL ESTATE, LLC, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17-MR-118 |
| THE VILLAGE OF BETHALTO, ILLINOIS; ALAN WINSLOW, in His Official Capacity as Mayor of the Village of Bethalto; GERALD BOURLAND, in His Official Capacity as Trustee of the Village of Bethalto; PERRY WITHERS, in His Official Capacity as Trustee of the Village of Bethalto; JEFF MULL, in His Official Capacity as Trustee of the Village of Bethalto; GARY BOST, in His Official Capacity as Trustee of the Village of Bethalto; BRADY DUGGER, in His Official Capacity as Trustee of the Village of Bethalto; and DAN McRAE, in His Official Capacity as Trustee of the Village of Bethalto, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Philip B. Alfeld, |
| Defendants-Appellees. | ) | Judge, presiding. |

**Opinion Filed:** October 12, 2018

**Justices:** Honorable Melissa A. Chapman, J.

Honorable Judy L. Cates, J., and
Honorable James R. Moore, J.,
Concur

**Attorneys for Appellant**

Gregory C. Mollett, Clark W. Hedger, Tali L. Katz, Greensfelder, Hemker & Gale, P.C., 10 South Broadway, Suite 2000, St. Louis, MO 63102

**Attorneys for Appellees**

Robert L. Jackstadt, Charles P. Watkins, Tueth, Keeney, Cooper, Mohan & Jackstadt, P.C., 101 West Vandalia, Suite 210, Edwardsville, IL 62025