FOURTH DIVISION

March 27, 2003

No. 1-01-3638

EDELMAN, COMBS AND LATTURNER, ) Appeal from the 

DANIEL A. EDELMAN, CATHLEEN ) Circuit Court

M. COMBS, JAMES O. LATTURNER, ) of Cook County

and TARA L. GOODWIN, )

)

Plaintiffs-Appellants, )

)

v. ) No. 00 L 2374

)

HINSHAW AND CULBERTSON, CREDIT ) 

PROTECTION ASSOCIATION, L.P., )

ETAN GENERAL, INC., AMERICAN )

INTERNATIONAL GROUP, INC., ROBERT ) Honorable

H. MURIEL, DAVID M. SCHULTZ, and ) Philip L. Bronstein

PETER D. SULLIVAN, ) Judge Presiding.

)

Defendants-Appellees. )

PRESIDING JUSTICE THEIS delivered the opinion of the court: 

This appeal arises out of the trial court's dismissal of plaintiffs', Daniel Edelman, Cathleen Combs, James Latturner, Tara Goodwin and their law firm Edelman, Combs & Latturner (collectively, plaintiffs), complaint.  Plaintiffs essentially allege that defendants, lawyers Robert H. Muriel, David M. Schultz,
 Peter D. Sullivan, their law firm Hinshaw & Culbertson (Hinshaw), and Hinshaw clients Credit Protection Association, L.P., Etan General, Inc., and its insurer, American International Group, Inc. (collectively, defendants), unlawfully published a legal memorandum to a bankruptcy trustee, two attorneys, and a "John Doe."  The memorandum allegedly contains false accusations that Edelman, Combs & Latturner (Edelman) engaged in a pattern of dishonest litigation tactics.  
On appeal, plaintiffs argue for reversal of the trial court's grant of defendants' combined motion to dismiss under section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2000)) because: (1) the defendants' communications were not protected by absolute or qualified privileges; and (2) plaintiffs stated causes of action for libel 
per se
, intentional interference with prospective economic advantage, and civil conspiracy.  For the following reasons, we affirm in part and reverse in part. 

BACKGROUND

This cause of action arose out of bankruptcy and consumer protection practices involving four law firms:  Feld & Korrub, Edelman, Hinshaw, and Jenner & Block (Jenner).  Feld & Korrub represents debtors petitioning for bankruptcy and refers the debtors' potential consumer protection claims to Edelman.  Edelman, a consumer protection litigation specialist, files these claims, often as class action lawsuits, for the debtors.  Hinshaw defends many of these consumer claims.  Jenner has defended at least one of Edelman's consumer claims, detailed below.  Plaintiffs allege that an acrimonious relationship erupted between Hinshaw and Edelman, and listed a number of federal consumer protection actions in which Hinshaw demonstrated an "animus" against Edelman.

The specific libelous statements originated from the interplay of bankruptcy cases 
In re Harris
, 98 B 9794, and 
In re Frys
, No. 98 B 27293, brought by Feld & Korrub, and consumer protection cases 
Harris v. Etan Industries, Inc.
, 98 C 4718, and 
 
Frys v. Dayton Hudson
, 99 C 134, brought by Edelman.   

On March 31, 1998, Feld & Korrub filed a chapter 7 (11 U.S.C. § 701 
et seq.
 (1994)) bankruptcy petition on behalf of debtor Charles Harris.  
In re Harris
, No. 98 B 9794.  A creditor's meeting was held, and six days later Feld & Korrub filed and served the debtor's amended schedules.  The amended schedules disclosed and exempted Harris's two potential consumer claims, thus retaining the claims for Harris rather than distributing them as assets through the estate to the creditors.  Six days later, the bankruptcy trustee filed a report without objection stating the Harris estate contained no assets.  The bankruptcy court discharged Harris from his debts on or about July 26, 1998, closed the bankruptcy estate, and discharged the trustee.

On July 30, 1998, Edelman filed the consumer lawsuit, 
Harris v. Etan Industries, Inc.
, 98 C 4718 (
Harris)
, under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 
et seq
. (2000)) ("FDCPA")  against defendants Credit Protection Association, L.P. (CPA), Etan General, Inc., and Media One.  CPA and Etan were general partners and were engaged in the debt collection business.  American International Group, Inc. (AIG), was the insurer of CPA and Etan (hereinafter CPA/Etan) and was obligated to defend them in the 
Harris
 lawsuit.  AIG hired Hinshaw to represent CPA/Etan, and Jenner represented Media One in the 
Harris
 lawsuit.

On November 9, 1998, Jenner filed "Media One's Answer to Class Action Complaint."  The answer asserted an affirmative defense that Harris lacked standing because the consumer claim "belongs, if to anyone, to the trustee of [Harris's] bankruptcy estate" because the claim should have been declared an asset of the Harris estate.  Jenner prepared a draft of a memorandum in support of the affirmative defense.  This "
Harris
 memorandum" contains the statements that form the basis of the present matter.  The memorandum accuses Edelman and other bankruptcy law firms, including Feld & Korrub, of a pattern of concealing assets from the bankruptcy trustee in order to later file those claims as lucrative class action lawsuits.  Concealment of the asset is tantamount to a violation of federal bankruptcy and criminal law and a violation of rules of professional responsibility.

The memorandum stated, 
inter
 
alia
, that the trustee's failure to administer debtor Harris's consumer claim during the 
Harris
 bankruptcy estate, No. 98 B 9794, "was procured through a pattern of concealment on the part of . . . both Edelman & Combs and its bankruptcy affiliates"; Edelman & Combs "routinely attempts to conceal claims from the trustees who are appointed to administer their clients' estates"; and Edelman "routinely hide[s] claims from the bankruptcy trustees until after the trustee has closed his file"; and "Media One's preliminary investigation provides strong circumstantial evidence that Edelman & Combs and Feld & Korrub make a practice of failing to disclose assets to the bankruptcy trustees."  A list of cases where Edelman had concealed claims and a chart summarizing Jenner's investigation of Edelman's conduct accompanied the memorandum.   At approximately 4:56 p.m. on March 15, 1999, Jenner attorneys faxed the draft 
Harris
 memorandum, Jenner's investigation charts, and a cover letter to Muriel and Schultz at Hinshaw's offices.  On March 16, 1999, Jenner filed with the federal district court a final version of the 
Harris
 
memorandum.  Plaintiffs allege Jenner made last-minute changes between the draft and the final version of the 
Harris
 memorandum.  The difference consisted of the number of cases concealed by Edelman and Feld & Korrub.  The complaint asserts that the discrepancies in the numbers between the final memorandum and the draft were such that 
"anyone would know" that the "numbers were false and had been manipulated and contrived to support a predetermined result," and "the final version had been prepared in great haste."  The conclusion of the memorandum—the accusation of concealment—remained the same in both the draft and final versions.

In March 1999, Jenner told an employee of the United States Trustee's Office about the 
Harris
 memorandum and promised to forward the memorandum to the employee.  The complaint alleges that Jenner acted as an agent of Hinshaw, CPA/Etan, AIG, Muriel, and Schultz.  

A similar contention arose in the 
Frys
 litigation.  On August 31, 1998, Feld & Korrub filed a Chapter 7 bankruptcy petition, 
In re Frys
, No. 98 B 27293, on behalf of Carol and Monte Frys.  The trustee assigned to represent the 
Frys
 bankruptcy estate was attorney Bruce de'Medici.  On October 14, 1998, after the creditor's meeting, de'Medici filed a report determining that the Frys estate had no assets.   On October 21, 1998, Feld & Korrub filed an amended schedule for the Frys, listing six potential consumer causes of action.  The schedule stated that each cause of action was "exempt" from the bankruptcy estate.  The creditors did not file an objection, the court discharged the debtors from their debts, and the court discharged de'Medici as trustee on December 29, 1998.  

On January 12, 1999, Edelman filed a consumer lawsuit, 
Frys v. Dayton Hudson
, 99 C 134, seeking class action certification.  Carol Frys's individual debt to Dayton Hudson was $100, and her individual FDCPA claim against Dayton Hudson was limited to the statutory maximum of $1,000.  As a class action, however, plaintiffs allege the lawsuit threatened Dayton Hudson with a settlement or judgment of as much as $500,000.  

On February 18, 1999, de'Medici filed a motion seeking to reopen the 
Frys
 bankruptcy estate and to vacate his previous "no asset" report.  The bankruptcy court initially heard the motion on March 2, 1999, and gave the trustee until March 16, 1999, to file a brief.  On March 11, 1999, Hinshaw filed an appearance as substitute counsel for Dayton Hudson in the 
Frys
 consumer lawsuit. On March 16, 1999, at 10:51 a.m., Hinshaw, Muriel, and Schultz distributed the draft 
Harris
 memorandum to de'Medici 
for consideration in connection with the  motion.
  Also on March 16, Jenner published the final copy of the 
Harris
 memorandum 
to de'Medici "on behalf of, and jointly, in concert and as part of a joint endeavor with defendants Hinshaw, CPA/Etan, AIG, Muriel, Schultz, and Sullivan."  De'Medici filed the brief in the bankruptcy court on or about March 18, 1999.

The complaint also alleges that sometime on or after March 15, 1999, Hinshaw provided a copy of the draft memorandum to an unknown individual, a straw man or "John Doe," allegedly with the intention that this individual "would provide the document to the ARDC [Attorney Registration and Disciplinary Commission] and [United States] Trustee's Office in a manner that would not impute responsibility to any of the defendants."  On April 2, 1999, Hinshaw, Muriel, and Schultz allegedly sent a copy of the "draft or final" 
Harris
 memorandum to attorney Debra A. Osmond, who was not a party or attorney in the 
Harris
 bankruptcy estate or consumer lawsuit.  Sometime between March 15, 1999, and June 23, 1999, Hinshaw, Muriel and Schultz  "directly or indirectly" provided a copy of the draft memorandum to attorney Mark Leopold, who also was not a party or attorney in the 
Harris
 bankruptcy estate or consumer lawsuit.

 Plaintiffs allege Hinshaw, Schultz, and Muriel knew of the falsity of the draft 
Harris
 memorandum based on their own knowledge of the subject matter and the substantial last-minute changes between the draft and the final affidavits.  Plaintiffs further allege that defendants Hinshaw, CPA/Etan, AIG, Muriel, Schultz, and Peter D. Sullivan, a Hinshaw partner, each knew that Edelman had an ongoing referral relationship with Feld & Korrub.  Defendants distributed the 
Harris
 memorandum to John Doe with the intent and knowledge that John Doe would forward the memorandum with a complaint to the ARDC and the U.S. Trustee's office about Feld & Korrub.  Defendants did this with the intent that such action would end Feld & Korrub's relationship with Edelman as a source of referrals.  The ARDC and the United States Trustee's office  contacted Feld & Korrub and confronted Feld & Korrub about its relationship with Edelman.  As a result, Feld & Korrub hired an attorney and ceased referring cases to Edelman.  Edelman claims actual damages in excess of $50,000 and punitive damages for loss of this referral relationship.

Finally, plaintiffs alleged that beginning in March 1999 and continuing to the present,   defendants Hinshaw, CPA/Etan, AIG, Muriel, Schultz, and Sullivan agreed, combined, and conspired to defame Edelman, misappropriate and use confidential financial information and to interfere with Edelman's legitimate expectation of prospective economic advantage with Feld & Korrub.  They further conspired to defeat the 
Harris
 consumer action and to influence de'Medici's brief to reopen the 
Frys
 bankruptcy estate. 

Throughout the complaint, plaintiffs allege that "AIG and CPA/Etan were joint principals of Hinshaw, and Hinshaw was the agent of AIG and CPA/Etan."  Plaintiffs also state that "at all times relevant to this [c]omplaint, defendants Muriel, Schultz and Sullivan were agents and representatives of each other and of defendant Hinshaw. . . . The Hinshaw attorneys assigned to the case were subagents of AIG and CPA/Etan. All acts attributed to Hinshaw and its attorneys were performed within the scope of their agency."  Plaintiffs further allege that all defendants acted jointly and in concert to defeat the 
Harris
 lawsuit by publishing false and defamatory statements about Edelman.  These allegations were incorporated into the civil conspiracy count.  

On February 29, 2000, plaintiffs filed an eight-count complaint containing allegations of libel 
per se, 
 intentional interference with prospective economic advantage, and civil conspiracy.   The original complaint named all the current defendants, except Sullivan.  The complaint also named Jenner, Jenner attorneys, and a paralegal.  Subsequently, the Jenner defendants were dismissed pursuant to a settlement agreement with Edelman.
  The remaining defendants filed a motion to dismiss and the court granted Edelman leave to file an amended complaint in lieu of responding to defendants' motions to dismiss.  Later, the court granted plaintiffs leave to plead over when the amended complaint was dismissed. 

On March 29, 2001, plaintiffs filed a  second amended complaint.  The complaint alleged five counts of libel 
per se
 based on publications of the 
Harris
 memorandum: Hinshaw's 
publication  to de'Medici (count I); 
Jenner's publication 
to de'Medici (count II); 
Hinshaw's 
publication 
to "John Doe" (count III); 
Hinshaw's 
publication to attorney Debra A. Osmond (count IV); 
and Hinshaw's publication 
to attorney Mark F. Leopold (count V).  The complaint also contained a count for  intentional interference with prospective economic advantage with Feld & Korrub (count VI); and civil conspiracy (count VII).  

On May 3, 2001, CPA/Etan and AIG filed a motion to dismiss pursuant to section 2-615 (735 ILCS 5/2-615 (West 2000)), stating that the complaint alleged no conduct on the part of CPA/Etan and AIG.  On July 9, 2001, the Hinshaw defendants filed a combined motion to dismiss pursuant to 2-619.1 (735 ILCS 5/2-619.1 (West 2000)).  Defendants argued that all statements were privileged and that the complaint did not state causes of action for counts III, V, VI, and VII.   The trial court granted defendants' motion to dismiss under section 2-619.1 on September 17, 2001.  Plaintiffs then filed this timely appeal.   

ANALYSIS

 Section 2-619.1 of the Code permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses. 735 ILCS 5/2-619.1 (West 2000).  It is proper for a court when ruling on a motion to dismiss under either section 2-615 or section 2-619 to accept all well-pleaded facts in the complaint as true and to draw all reasonable inferences from those facts in favor of the nonmoving party.  
Lykowski v. Bergman
, 299 Ill. App. 3d 157, 162, 700 N.E.2d 1064, 1069 (1998). 
 Our review is 
de novo
 for motions to dismiss brought under both sections 2-615 and 2-619. 
Lykowski
, 299 Ill. App. 3d at 162, 700 N.E.2d at 1069.

We first consider the dismissal under section 2-619.  Section 2-619 provides for involuntary dismissal based upon certain defects or defenses.  "If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit."  735 ILCS 5/2-619 (West 2000).  Section 2-619(a)(9) of the Code provides for involuntary dismissal of a cause of action where the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim.  735 ILCS 5/2-619(a)(9) (West 2000).  In a defamation action, the issue of  privilege is an affirmative defense that may be raised and determined in a section 2-619 motion.  
Harris v. News-Sun
, 269 Ill. App. 3d 648, 651, 646 N.E.2d 8, 10 (1995). 

 
 The defense of privilege rests upon the idea "that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation."  W. Keeton, Prosser & Keeton on Torts, §114, at 815 (5
th
 ed. 1984).  If the policy interest is of "paramount importance, considerations of policy may require that the defendant's immunity for false statements be absolute, without regard to his purpose or motive, or the reasonableness of his conduct."  W. Keeton, Prosser & Keeton on Torts, §114, at 816 (5th ed. 1984); 
Weiler v. Stern
, 67 Ill. App. 3d 179, 384 N.E.2d 762, 763 (
1978)  "If it has relatively less weight from a social point of view, the immunity may be qualified, and conditioned on good motives and reasonable behavior."  W. Keeton, Prosser & Keeton on Torts, § 114, at 816 (5
th
 ed. 1984). 

   One type of recognized absolute privilege is the attorney litigation privilege.   The Restatement (Second) of Torts provides, in pertinent part:

"An attorney at law is absolutely privileged to publish false and defamatory matter of another concerning communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts, §586, at 247 (1977). 

Comment 
a
 to section 586 states that a publication is "protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding." Restatement (Second) of Torts §586, Comment 
a
, at 247. This privilege is "based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients."  Restatement (Second) of Torts §586, Comment 
a
, at 247.   

In light of the complete immunity provided by an absolute privilege, the classification of absolutely privileged communication is necessarily narrow
.  
Kurczaba v. Pollock
, 318 Ill. App. 3d 686, 702, 742 N.E.2d 425, 439 (2000); 
Thompson v. Frank
, 313 Ill. App. 3d 661, 664, 730 N.E.2d 143, 145 (2000).  The privilege does not cover the publication of defamatory matter that has no connection whatsoever to the litigation.  
Kurczaba
, 318 Ill. App. 3d at 701, 742 N.E.2d at 439, citing Restatement (Second) of Torts, § 586, Comment 
c
, at 247(1977).  The privilege is available only when: the publication "'was made in a judicial proceeding; had some connection or logical relation to the action; was made to achieve the objects of the litigation; and involved litigants or other participants authorized by law.'"  
Kurczaba
, 318 Ill. App. 3d at 702, 742 N.E.2d at 439, quoting 53 C.J.S. 
Libel & Slander
 §72, at 132 (1987).  

In the instant case, the Hinshaw defendants represented Dayton Hudson, one of the creditors in the 
Frys
 bankruptcy case.   Plaintiffs specifically allege that one of the reasons defendants sent the 
Harris
 memorandum to the 
Frys
 bankruptcy trustee de'Medici was to increase the chance the 
Frys
 bankruptcy proceeding would be reopened.  Thus, the privilege is available to defendants because the communication to de'Medici was made in relation to a judicial proceeding,
 was made to further the interests of the client, Dayton Hudson, and involved an authorized participant, the bankruptcy trustee
. 

Additionally, public policy requires that there be a free-flow of honest information to a court or disciplinary tribunal.  
Lykowski
, 299 Ill. App. 3d at 164-65, 700 N.E.2d at 1071.  Here, the bankruptcy trustee is analogous to a court in that it is appointed by the bankruptcy judge and performs quasi-judicial functions.  It executes the bankruptcy judge's orders concerning the collection and disposition of estate property, which is essential for the efficient functioning of the bankruptcy court.  As such, the trustee's duty to assemble the bankruptcy estate requires an unimpeded reception of information regarding the accuracy of its no-asset reports.  Therefore, the rationale supporting the absolute privilege protecting communications to a court applies here.  
Lykowski
, 299 Ill. App. 3d at 164-65, 700 N.E.2d at 1071.
  It is of paramount public importance to encourage those who have knowledge of dishonest or unethical conduct on the part the creditors or debtors to impart that knowledge to the bankruptcy trustee who handled a particular bankruptcy estate.  Thus, we find that the communication to de'Medici was absolutely privileged, and conclude that count I of the second amended complaint was properly dismissed. 

As to counts IV and V, alleging publications of the draft or final 
Harris
 memorandum to attorneys Debra Osmond and Mark Leopold, we find absolute privilege does not apply.  While Illinois courts have extended the attorney litigation privilege to cover out-of-court communications between opposing counsel, attorneys and their clients, and between attorneys representing different plaintiffs in lawsuits against the same defendant, Illinois has never extended the privilege to other persons without a connection to the lawsuit.  
Kurczaba
, 318 Ill. App. 3d at 704, 742 N.E.2d at 440; 
Thompson
, 313 Ill. App. 3d at 664, 730 N.E.2d at 146.  Here, the face of the complaint is devoid of allegations that Hinshaw, Osmond, and Leopold were opponents or shared a common opponent in pending litigation. The only facts alleged in the complaint describing Osmond and Leopold is that they are "attorneys" with no relationship to the 
Harris
 bankruptcy estate or consumer lawsuit.  Most importantly, defendants have not demonstrated how publishing the 
Harris
 memorandum to the two attorneys served the interest of any client.  The attorney litigation privilege is therefore inapplicable.     Defendants alternatively rely on the qualified privilege, citing 
Kuwik v. Starmark Star Marketing & Administration, Inc.
, 156 Ill. 2d 16, 619 N.E.2d 129 (1993).   The 
Kuwik
 court held that the issue of whether a qualified privilege exists is a question of law.  
Kuwik
, 156 Ill. 2d at 25, 619 N.E.2d at 133.  A privilege exists when: (1) a statement is made in good faith by the defendant;  (2) the defendant has an interest or duty to uphold; (3) the statement is limited in its scope to that purpose;  (4) it is made in a proper occasion; and (5) the statement is published in a proper manner to the proper parties.  
Kuwik
, 156 Ill. 2d at 25, 619 N.E.2d at 133. Our inquiry is a general one, requiring us to weigh the value of the type of interest to be protected against the degree of damage expected from the release of the type of defamatory matter involved.  
Kuwik
, 156 Ill. 2d at 28, 619 N.E.2d at 134, quoting S. Harper, F. James & O. Gray, Torts §5.25, at 214 (2d ed. 1986).   The
 Kuwik
 court adopted the approach taken in sections 593 through 599 of the Restatement (Second) of Torts.  The court recognized three categories of communications subject to qualified privilege: (1) those involving some interest of the person who published the defamatory matter; (2) those involving some interest of the person to whom the matter is published or a third party; and (3) those involving a recognized public interest.  
Kuwik
, 156 Ill. 2d at 29, 619 N.E.2d at 134, quoting S. Harper, F. James & O. Gray, Torts §5.25, at 216 (2d ed. 1986).

Defendants are unable to identify any legitimate interest they had to communicate the allegations against plaintiffs to Osmond and Leopold.  The complaint is devoid of allegations that Osmond or Leopold could have been of service in the lawful protection of Hinshaw's or the client's interest.  Osmond or Leopold, simply as generic "attorneys," did not have an interest to elevate the communication beyond mere gossip to make it of social importance.   Additionally, the complaint does not allege Osmond or Leopold was authorized or privileged to take action to prevent any improper actions by plaintiffs.    Thus, the mere statement that Osmond and Leopold were "attorneys" is insufficient to immunize defendants from liability for the communication of defamatory material.  We hold, therefore, that the trial court erred in finding defendants' communications
 to Osmond and Leopold to be privileged in the absence of allegations that the communication furthered some interest of social importance.

We next consider the complaint under section 2-615.  To survive a motion to dismiss pursuant to section 2-615, a complaint must be both legally and factually sufficient.  
Lykowski
, 299 Ill. App. 3d at 163, 700 N.E.2d at 1069.  At issue here is the factual sufficiency of the complaint.  Illinois is a fact-pleading jurisdiction. 
Knox College v. Celotex Corp.
, 88 Ill. 2d 407, 426-27, 430 N.E.2d 976, 984 (1981). Although both sections 2-603(c) and 2-612(b) of the Code (735 ILCS 5/2-603(c), 2-612(b) (West 2000)) mandate the liberal construction of pleadings, these provisions do not authorize notice pleading.  
Knox
, 88 Ill. 2d at 426-27, 430 N.E.2d at 986.  Conclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him.  
Adkins v. Sarah Bush Lincoln Health Center
, 129 Ill. 2d 497, 519-20, 544 N.E.2d 733, 744 (1989).  Rather, under Illinois fact pleading, the pleader is required to set out ultimate facts that support his or her cause of action.  
People ex rel. Fahner v. Carriage Way West, Inc.
, 88 Ill. 2d 300, 308, 430 N.E.2d 1005, 1008 (1981).       

In count II,  plaintiffs allege Jenner and its attorneys sent the memorandum to the trustee "on behalf of, and jointly, in concert, and as part of a joint endeavor" with Hinshaw, its attorneys, CPA/Etan, and AIG.  Although Jenner is no longer a defendant, plaintiffs argue that other defendants continue to be liable for Jenner's actions, despite the settlement and release.  Plaintiffs apparently recognize that in a joint venture, the release of an agent also resolves a claim against the principal.  
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 528, 622 N.E.2d 788, 797 (1993).  However, plaintiffs deny that their allegations involve an agency relationship, but characterize them as a conspiracy among the defendants and Jenner, citing 
Adcock v Brakegate, Ltd
, 164 Ill. 2d 54, 645 N.E.2d 888 (1994).    

Civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means.   
Bilut v. Northwestern University
, 296 Ill. App. 3d 42, 49, 692 N.E.2d 1327, 1332 (1998).  The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss.  
Buckner v. Atlantic Plant Maintenance, Inc.
, 182 Ill. 2d 12, 23, 694 N.E.2d 565, 570 (1998)
.  Because the acts of an agent are considered in law the acts of the principal, there can be no conspiracy between a principal and an agent.  
Buckner
, 182 Ill.2d at 24, 694 N.E.2d at 570.   Plaintiffs' claim for defendants' 
liability pursuant to a conspiracy with Jenner is entirely lacking factually.
  The complaint here alleges only that Jenner acted "on behalf of, and jointly, in concert and as part of a joint endeavor with defendants Hinshaw, CPA/Etan, AIG, Muriel, Schultz, and Sullivan." This mere characterization of conspiracy, without more, is insufficient to hold the Hinshaw defendants responsible for the actions of the Jenner defendants, who have settled and been released.  
Buckner
, 182 Ill. 2d at 24, 694 N.E.2d at 570.  Count II was properly dismissed. 

Count III's allegation that the 
Harris
 memorandum was published to "John Doe" is insufficient because it cannot be determined from the complaint to whom or under what circumstances the allegedly libelous statements were communicated.  See, 
e.g.
, 
Lykowski
, 299 Ill. App. 3d at 164, 700 N.E.2d at 1069.  Additionally, the lack of detail here stands in sharp contrast to the wealth of information provided elsewhere in the complaint and demonstrates the conclusory nature of the publication to "John Doe." Thus, count III was also properly dismissed.

Count IV alleges unequivocally that Hinshaw, Muriel, and Schultz sent the 
Harris
 memorandum to attorney Osmond on April 2, 1999.  
Defendants make no argument under section 2-615 as to the insufficiency of this count.  We find that it does state a cause of action for libel 
per se
 because it can be determined by whom, to whom, and under what circumstances the statement was made.  

Count V, concerning the communication to Leopold, alleges that "sometime between March 15, 1999 and June 23, 1999, Hinshaw provided a copy of the draft 
Harris
 memorandum, directly or indirectly to attorney Mark F. Leopold."  Defendants argue that the allegation of "indirectly or directly" is too vague to interpose the defenses such as statute of limitations and privilege.  We agree.  The allegation is factually deficient because it cannot be determined to whom, by whom, and under what circumstances the allegedly libelous statements were made.  Plaintiffs in their reply brief concede  they have been unable to plead "precisely how" Leopold received the 
Harris
 memorandum.  Count V failed to set forth the ultimate facts of the claim and was properly dismissed.   

Count VI, alleging intentional interference with prospective economic advantage, also premised on the publication to "John Doe," is similarly deficient. This count states that defendants forwarded the 
Harris
 memorandum to "John Doe" with the intent that John Doe forward it to the ARDC and the United States Trustee's office to interfere with its relationship with Feld & Korrub.  To plead a cause of action for interference with prospective economic advantage, one must plead: (1) the existence of a valid business relationship or expectancy; (2)the knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.  
Grund v. Donegan
, 298 Ill. App. 3d 1034, 1038, 700 N.E.2d 157, 160 (
1998); 
Galinski v. Kessler
, 134 Ill. App. 3d 602, 607, 480 N.E.2d 1176, 1180 (
1985).  Because it is impossible to determine to whom the libelous statements were published in Count III, this count only  generally concludes that Hinshaw caused a breach of the relationship between Feld & Korrub and Edelman.  We further note that communications to the ARDC are privileged.  
Lykowski
, 299 Ill. App. 3d at 164, 700 N.E.2d at 1071.  This count fails accordingly.  

Plaintiffs' count VII, civil conspiracy, also fails.  The complaint is replete with allegations of agency between the defendants. Specifically, CPA/Etan as clients and AIG as insurer are alleged to be "joint principals" of Hinshaw.  Muriel, Schultz, and Sullivan are alleged to be "agents and representatives of each other and the Hinshaw  firm."  Because the acts of an agent are considered in law the acts of the principal, there can be no conspiracy between a principal and an agent.   
Buckner
, 182 Ill. 2d at 24, 694 N.E.2d at 570.  Therefore, this count also fails because Hinshaw, Schultz, Muriel, Sullivan, AIG, and CPA/Etan were legally incapable of conspiring together.

The only conduct alleged concerning defendant Peter D. Sullivan appears in the civil conspiracy count.  As we have found as a matter of law that count fails, we affirm the dismissal of defendant Sullivan.

Defendants CPA/Etan and AIG claim the complaint is legally deficient as to them because they cannot be held vicariously liable for any alleged intentional torts of their lawyers.  A panel of this court has recently held that "an attorney's errors and misconduct are attributed to his clients; clients are principals, the attorney is an agent, and under the law of agency, the principal is bound by his chosen agent's deeds."  
Horwitz v. Holabird and Root
, 312 Ill. App. 3d 192, 195, 726 N.E.2d 632, 635 (2000).  Justice Hoffman dissented, arguing that attorneys are independent contractors when they are engaged to pursue a claim without further direction.  
Horwitz
, 312 Ill. App. 3d at 198, 726 N.E.2d at 637 (Hoffman, J., dissenting).  In the alternative, if an attorney is in fact deemed an agent, the general retention of an attorney to do all things necessary to pursue a claim, should be interpreted as authorizing the attorney only to do all things legal and proper, and should not be construed, without more, as giving the attorney direction and permission to commit a tortious act.  
Horwitz
, 312 Ill. App. 3d at 199, 726 N.E.2d at 638 (Hoffman, J., dissenting).   

We believe Justice Hoffman's position is better reasoned.  Here, the only facts alleged are that CPA/Etan was a defendant in the 
Harris
 case, AIG was its insurer, and AIG retained Hinshaw to represent CPA/Etan.  Beyond the conclusory allegations that the attorneys sent the 
Harris
 memorandum "on behalf of, and jointly, in concert, and as part of a joint endeavor with" CPA/Etan and AIG,  there are no facts demonstrating that the clients authorized or controlled the conduct of Hinshaw.  We therefore conclude that the allegations pertaining to AIG and CPA/Etan are factually insufficient on all counts of plaintiffs' complaint.

Accordingly, we affirm the circuit court's dismissal of counts I, II, III, V, VI, and VII, and  dismiss all claims against defendants CPA/Etan, AIG, and Peter D. Sullivan.  We reverse the circuit court with regard to count IV and remand for further proceedings.

Affirmed in part; reversed in part. 

HARTMAN and KARNEZIS, J.J., concur.