NOTICE
Decision filed 11/23/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 200065-U

NO. 5-20-0065

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| MICHAEL STOREY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-MR-147 |
| | ) | |
| THE CITY OF ALTON, | ) | Honorable |
| | ) | Sarah D. Smith, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Overstreet concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's dismissal of the plaintiff's third amended complaint is affirmed where the plaintiff had no current lawfully vested right that could be enforced by a *mandamus* order, and his regulatory takings claim was barred by the doctrine of *res judicata*.

¶ 2    The plaintiff, Michael Storey, *pro se* filed a three-count complaint in the circuit court of Madison County against the defendant, the City of Alton (City), seeking to compel the defendant to allow him to develop his property in accordance with a 1986 preannexation agreement and the Official City Code of Alton (City Code), asserting that the City's action in denying his proposed subdivision plat constituted a regulatory taking, and seeking punitive damages against the City. Thereafter, the trial court dismissed his

1

*pro se* complaint, finding that he had no current lawfully vested right that could be enforced by way of a *mandamus* order, that he failed to meet his burden for invoking the doctrine of estoppel, that his regulatory takings claim was barred by the doctrine of *res judicata*, and that the City was immune from punitive damages. The plaintiff then filed a motion to reconsider, which was denied. For the reasons that follow, we affirm the court's dismissal of the plaintiff's third amended complaint.

¶ 3                                    I. BACKGROUND

¶ 4     In 1999, the plaintiff purchased a five-acre plot of land in Alton, Illinois, for the purpose of developing the land into a subdivision consisting of lots for manufactured (mobile) homes. He purchased the property from his father. The property was annexed into the City by means of a 1986 preannexation agreement; the plaintiff alleged that the preannexation agreement stated that all property included in the annexation would be zoned R-6 allowing it to be used for the placement of manufactured homes and that the owner of the property would be entitled to subdivide the property. Because he sought to subdivide the property into separate lots in accordance with the preannexation agreement, he was required to obtain City approval for his proposed subdivision. Shortly after purchasing the property, the plaintiff submitted his proposed plat for preliminary City approval. From 2000 through 2003, the plaintiff discussed his plans with the City, and the plat was reviewed at multiple City planning commission meetings. The City ultimately denied his plat for the proposed subdivision, at least in part on the fact that the available water supply provided insufficient pressure for fire safety purposes (there was a 500 gallon per minute

2

requirement for the water supply). The entire property was served by the Fosterburg Water District and had never met the 500 gallon per minute requirement.

¶ 5    In 2008, the plaintiff again submitted a proposed plat to the City. He withdrew the 2008 plat as the planning commission was in the process of issuing a recommendation that it be rejected because of errors in his lot dimensions and/or legal description. The plaintiff alleged that this withdrawal was with the express understanding that any future plats would not be subject to any ordinances not in effect in July 1986, when the preannexation agreement was entered. On April 10, 2002, the City allowed the plaintiff to subdivide the property, creating one lot out of the larger tract and thereafter allowed him to place a manufactured home on that lot. The City also allowed him to sell and transfer deed to that lot in July 2002. The City thereafter allowed him to develop a second manufactured home site on that property and place a manufactured home there. The City also issued numerous occupancy permits for those two homes.

¶ 6    The plaintiff subsequently submitted two proposed plats in 2013, but the City notified him that they were defective due to various problems and omissions relating to the property descriptions, contour lines, street dimensions, and utility information. After being notified of these defects, the plaintiff did not submit another proposed plat.

¶ 7    In November 2015, the plaintiff filed a *pro se* civil rights complaint in the United States District Court for the Southern District of Illinois (the district court). In his *pro se* complaint, the plaintiff asserted that the City had used its position to prevent him from subdividing his property into lots for manufactured homes, that the City had refused to accept valid preliminary plats under false pretenses, and that the City continuously cited

3

him for ordinance violations in an effort to convince him to abandon his plans to develop his property. He alleged that the City had allowed his neighbors to violate City ordinances. He asserted that the City claimed that he did not have enough water supply to subdivide his property but continued to annex property into the City even though those properties had the same water supply. He claimed that the City had denied him the use of his land since 1999, that they were using selective prosecution and malicious prosecution, and that they had denied him equal protection under the law. He requested compensatory and punitive damages.

¶ 8    After both sides moved for summary judgment, the district court granted summary judgment in favor of the City. In the order, the district court analyzed count I of the plaintiff's *pro se* complaint as an equal protection claim. The district court noted that constitutional tort claims in Illinois filed pursuant to 42 U.S.C. § 1983 (1996) were subject to a two-year statute of limitations, and thus, a fourteenth amendment equal protection claim would be subject to a two-year limitation period. The district court also noted that state law claims against Illinois municipalities were subject to a one-year statute of limitations (745 ILCS 10/8-101 (West 2016)). Therefore, the court noted that any equal protection claim that accrued more than two years prior to November 30, 2015, (the date the plaintiff filed his lawsuit) was time barred. As the plaintiff's most recently submitted proposed plats to the City were in August and September of 2013, his equal protection claim relating to these two submissions was time barred. The court further noted that he had submitted no new proposed plats after that time period. Because no alleged wrongful

4

act occurred within the two-year period prior to filing suit, the plaintiff's claim was time barred.

¶ 9    With regard to his claim that his equal protection rights were violated because the City issued him ordinance violation citations but declined to issue citations for neighboring properties, the district court noted that the plaintiff did not dispute that he had committed ordinance violations. The gist of his claim was that his neighbors had also committed ordinance violations, but the City did not prosecute them. However, the district court noted that law enforcement officials were entitled to a great deal of discretion in how they chose to prosecute offenses, and that since they had limited resources at their disposal, it was unrealistic to assume that every ordinance violation or criminal act would be prosecuted. The district court further noted that it had been unable to find any reported cases where a plaintiff had demonstrated a cognizable equal protection claim on the basis of being issued legitimate citations. Thus, the district court found that, at the heart of the plaintiff's claim was an allegation of uneven enforcement, which without something more, was unable to survive summary judgment. Accordingly, the district court found that the plaintiff failed to establish that he was entitled to judgment as a matter of law.

¶ 10    Thereafter, the plaintiff appealed to the United States Court of Appeals for the Seventh Circuit (court of appeals), which, on February 2, 2018, affirmed the district court's decision. In its order, the court of appeals found that the plaintiff's equal protection claim relating to the subdivision of his land was untimely under the two-year statute of limitations applicable to 42 U.S.C. § 1983 cases arising in Illinois because his most recent proposal was rejected more than two years before he filed this suit. The court of appeals noted that

the plaintiff's injury would arise from the City's denial of his request to subdivide his property; that his claim accrued when he knew or should have known that his constitutional right to equal protection purportedly was violated; and that this occurred when the City denied approval, which was something that last occurred in September 2013, more than two years before he filed this suit in November 2015. The court of appeals acknowledged the plaintiff's argument that the lingering effects of the City's plat denials continued to injure him, but it concluded that this was insufficient to save his claim. As for his selective enforcement claim, the court concluded that this claim also failed because the plaintiff had not provided any evidence that the City treated a similarly situated landowner differently from him, nor had he shown that the City lacked a rational basis for its actions. Moreover, the fact that the plaintiff admitted that he committed certain ordinance violations and paid fines for those violations demonstrated that the City had a rational basis for citing him. On June 11, 2018, the United States Supreme Court denied *certiorari*. *Storey v. City of Alton*, No. 17-8783 (U.S. June 11, 2018).

¶ 11 On May 31, 2018, the plaintiff filed a complaint for *mandamus* in the circuit court of Madison County. In the complaint, he alleged, in pertinent parts, that his property was properly zoned for the placement of multiple manufactured homes; that the City had denied him the use of his property since 2000 by claiming that it lacked a sufficient water supply to be developed; that the City Code did not prevent him from subdividing his land and had no provision concerning a sufficient water supply; and that although the City claimed his property must have a water supply of at least 500 gallons per minute to develop, it had allowed and continued to allow his neighbors and surrounding property owners to develop

6

and use their property without meeting this same standard. The plaintiff also alleged that he had filed numerous ordinance violation complaints with the City concerning neighboring properties, and the City had refused to take action against those property owners. The plaintiff requested, *inter alia*, an order of *mandamus* compelling the City to allow him to develop his property while having the same water supply as others under the City's jurisdiction and to apply its City Code to all residents on an equal basis. He requested compensatory as well as punitive damages.

¶ 12    On August 10, 2018, the City filed a motion to dismiss the plaintiff's complaint for *mandamus* on the grounds that the doctrines of claim preclusion and issue preclusion both barred the plaintiff's lawsuit as the issues and claims presented by the plaintiff in the previous federal litigation were identical to the issues and claims presented in this case. The City also contended, in pertinent part, that the plaintiff's complaint failed to state a cause of action upon which relief could be granted pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)) because a *mandamus* action was not appropriate to compel discretionary acts.

¶ 13    Before the trial court ruled on the City's motion to dismiss, the plaintiff sought to amend his complaint with additional counts, including a claim for regulatory taking. The amended complaint was filed on January 25, 2019. Thereafter, on February 5, 2019, the City filed a motion to dismiss the plaintiff's amended complaint. Before the adjudication of that motion, the plaintiff moved to voluntarily dismiss several counts of his amended complaint and sought leave to file a second amended complaint, which again brought a *mandamus* action and a regulatory takings claim.

7

¶ 14    On April 26, 2019, the trial court dismissed the plaintiff's second amended complaint without prejudice and allowed him 30 days to file a third amended complaint. On May 2, 2019, the plaintiff filed a third amended complaint, which is the subject of this appeal.  In the three-count complaint, the plaintiff sought a writ of *mandamus*, asserted a regulatory takings claim, and sought punitive damages against the City.  The plaintiff alleged that the only public water supply available to serve his property had a flow of 400 gallons per minute, but the City had previously allowed him to subdivide the property and issued him numerous occupancy permits for that property, even though it did not meet the water supply standards.  The plaintiff contended that the City's actions were in direct conflict with the principle of estoppel.  The plaintiff also alleged that the City issued building and occupancy permits for homes within its jurisdiction that did not meet the water flow requirement.  The plaintiff also argued that the City's actions conflicted with its City Code, which required fair enforcement.  Thus, the plaintiff sought a *mandamus* directing the City to allow him to develop his property in compliance with the City Code and the preannexation agreement.

¶ 15    In the count alleging a regulatory taking, the plaintiff asserted that he had no remedy for increasing the available water supply to his property to the required standard.  He also alleged that the City's fire chief had power to modify any Fire Prevention Code (Fire Code) provision that was practically difficult to comply with, but the fire chief refused to modify the water supply requirement with regard to the plaintiff's property.  He contended that the City's actions amounted to a regulatory taking of his property that caused him financial

losses in excess of $500,000. Thus, he requested actual damages in the amount of $500,000.

¶ 16 As for the plaintiff's punitive damages claim, he alleged that the cost of installing a 1300 foot water main to comply with the water supply requirement would be financially impractical; that the City's continued denial to allow him to use his property had caused him severe financial losses; and that the City had alternative options available that would either allow it to waive the requirement or assist him in complying with the requirement, but the City refused to utilize those options. The plaintiff contended that the City's refusal to use those options was willful, malicious, and with forethought. The plaintiff requested punitive damages in the amount of $500,000.

¶ 17 On May 30, 2019, the City filed a motion to dismiss the third amended complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). In the motion, the City argued that it was significant that the plaintiff had not indicated that he had pending, or even recently filed, any plans for development. As such, the City argued that any order by the trial court on a *mandamus* claim would be advisory at best. The City argued that *mandamus* actions were proper to compel public officials to perform purely ministerial, nondiscretionary acts; that *mandamus* could not be used to order the execution of a discretionary duty; and that no such clear-cut nondiscretionary act was present here. The City contended that the plaintiff's *mandamus* argument was further undercut by his acknowledgment that the City's fire chief had discretion to modify certain provisions of the City Code and that the trial court could not order the fire chief to violate the law and the Fire Code. The City contended that that any argument based on the 1986 preannexation

agreement was time barred under section 11-15.1-5 of the Illinois Municipal Code (65 ILCS 5/11-15.1-5 (West 2018)).

¶ 18    Moreover, the City argued that numerous building codes, including the City's Fire Code, were involved in this proposed development and that the plaintiff was seeking to circumvent public safety requirements.  The City also argued that any order requiring compliance with the preannexation agreement would not alter the position of the parties as the plaintiff had not recently filed a plan for proposed development.

¶ 19    As for the plaintiff's estoppel claim, the City contended that estoppel could not be used to endanger public health as the plaintiff was seeking to do.  The City also argued that the plaintiff failed to state a cause of action for estoppel as he had alleged no facts regarding detrimental reliance.  The City argued that the plaintiff had pled that the City had been very consistent in dealing with him and that there was no basis for applying estoppel under the theory that " 'they got to do it so I should get to do it too.' "

¶ 20    As for his regulatory takings claim, the City asserted that claim was barred by *res judicata* because it should have been brought in the federal court action, and the plaintiff had a full and fair opportunity to litigate this matter in federal court.  The City noted that the doctrine of claim splitting precluded a party from bringing a duplicate lawsuit arising from the same transaction or events underlying a previous suit by simply changing the legal theory.  Moreover, the City argued that the federal court's rulings on the statute of limitation issue were dispositive.

¶ 21    With regard to the plaintiff's punitive damages claim, the City noted that municipalities were absolutely immune from punitive damages under section 2-102 of the

Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-102 (West 2018)). Accordingly, the City requested that the trial court dismiss the plaintiff's third amended complaint.

¶ 22 On June 17, 2019, the plaintiff filed a response to the City's motion to dismiss. In the motion, the plaintiff contended that because he had submitted a preliminary plat in April 2019,[1] there was no statute of limitation issue. He also argued that his federal case dealt with zoning and plat approval, and neither of these two issues were raised in his complaint at issue here. Thus, he argued that he was not relitigating issues brought in the federal court. He further contended that the City's continued denial of the use of his property resulted in a regulatory taking, and his property could not be used for any practical purpose as a result of the City's refusal to approve his proposed plat.

¶ 23 The plaintiff argued that a cause of action was clearly stated in his complaint as the City refused to follow the City Code, that his *mandamus* action was to compel the City to perform the purely ministerial nondiscretionary act of enforcing its City Code, that he was not asking for anything other than acts the City had performed in the past, and that a *mandamus* would resolve the issue of the City's regulatory taking of his property. He contended that the City and the City's fire chief had exercised their discretion by allowing variances to other property owners who had placed homes in areas that failed to meet the City's Fire Code; that the City's argument that his proposed development would endanger public health when other developments were approved without meeting the City's water

_____

[1]In his appellant brief, he asserted that he had no pending plat with the City and has not presented any plat to the City since 2008.

11

supply standard was meritless; and that the fire chief had discretion to modify the City Fire Code to allow for his subdivision, so the fire chief would not be violating any law or code by allowing him to develop his property with the available water supply. He asserted that the City's actions were malicious and were intended to prevent him from developing his subdivision.

¶ 24 On July 12, 2019, the trial court held a hearing on the City's motion to dismiss. At the hearing, the City contended that *mandamus* was not an appropriate remedy because the court could not order the City to do a discretionary act; that the plaintiff's claim was time barred because he relied on a 1986 ordinance/preannexation agreement, and those agreements expire within 20 years; that the plaintiff's complaint did not properly state a cause of action for estoppel; that his regulatory takings claim was a relitigation of issues previously brought in his federal court case; and that municipalities were immune from punitive damages. As for the plaintiff filing a proposed plat in April 2019, the City argued that if the plaintiff wanted to rely on a currently pending plat, then there were issues with his failure to exhaust administrative remedies and with his claim not being ripe. In response, the plaintiff contended that the City's actions precluded him from being able to use his property as zoned, and the City had previously allowed him to subdivide and place two mobile homes on the property without meeting the water supply requirement, so it was estopped from enforcing that rule against him now.

¶ 25 On December 19, 2019, the trial court entered an order, granting the City's motion to dismiss the plaintiff's third amended complaint. In the order, the court noted that the purpose of a *mandamus* action was to enforce rights that were already lawfully vested at

12

the time the suit was filed and that to establish standing in a *mandamus* action, the complaining party must show a sufficiently protectable interest pursuant to statute or common law that was allegedly injured. The court found that the plaintiff had not asserted that he had a current lawfully vested right that could be enforced by a *mandamus* order. Although the court acknowledged that the plaintiff alleged that he had a preliminary plat pending with the City, it found that the issue was not ripe for the court's determination. The court noted that the plaintiff was essentially asking it to provide an advisory opinion to the City regarding said plat, which was outside the court's purview.

¶ 26    Also, the trial court noted that the plaintiff had invoked estoppel in his complaint by alleging that the City allowed certain infrastructures to be built on other properties, alleging that he reasonably relied on this permission to his detriment, and citing to the 1986 preannexation agreement to justify his detrimental reliance. However, the court noted that any such claim would be time barred. See 65 ILCS 5/11-15.1-1 (West 2018); *id.* § 11-15.1-5.[2] Further, the court noted that to allege estoppel, the aggrieved party must show that (1) the municipality affirmatively acted, (2) its act induced the aggrieved party's

---

[2]In determining that the plaintiff's detrimental reliance claim would be time barred, the trial court incorrectly cites to "65 ILCS 5/11-15.5-1," which does not exist. However, section 11-15.1-1 of the Illinois Municipal Code states as follows with regard to annexation agreements with owners of record: "The corporate authorities of any municipality may enter into an annexation agreement with one or more of the owners of record of land in unincorporated territory. *** The agreement shall be valid and binding for a period of not to exceed 20 years from the date of its execution." 65 ILCS 5/11-15.1-1 (West 2018). Also, section 11-15.1-5 of the Illinois Municipal Code states as follows regarding the validity of existing preannexation agreements: "Any annexation agreement executed prior to October 1, 1973[,] which was executed pursuant to a two-thirds vote of the corporate authorities and which contains provisions not inconsistent with Section 11-15.1-2 hereof is hereby declared valid and enforceable as to such provisions for the effective period of such agreement, or for 20 years from the date of execution thereof, whichever is shorter." *Id.* § 11-15.1-5.

13

substantial reliance, and (3) the aggrieved party substantially altered its position due to the justifiable reliance. The court found that the plaintiff had not met this burden.

¶ 27 Regarding his regulatory takings claim, the trial court stated that it spent a significant amount of time reviewing the plaintiff's case filed in the district court and agreed that the regulatory takings claim here was factually similar to the allegations raised in the federal case. As such, the court found that his regulatory takings claim was barred by *res judicata* as it had already been litigated in federal court. With regard to his punitive damages claim, the court found municipalities were immune from punitive damages pursuant to section 2-102 of the Tort Immunity Act (745 ILCS 10/2-102 (West 2018)). Accordingly, the court dismissed the plaintiff's third amended complaint with prejudice.

¶ 28 On December 19, 2019, the plaintiff filed a motion to reconsider. On February 13, 2020, the trial court denied his motion to reconsider, finding that the plaintiff had not alleged any new information in his motion that was not already considered. The plaintiff appeals.

¶ 29                                II. ANALYSIS

¶ 30 Before addressing the substance of this appeal, we must first discuss the City's request to strike the plaintiff's appellant brief and dismiss the appeal. The City argues that the plaintiff waived his arguments by failing to cite to any authority in his *pro se* appellant brief as required by Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018). The City also contends that the plaintiff's *pro se* brief fails to comply with Rule 341 in that (1) it does not clearly define the issues on appeal (see Ill. S. Ct. R. 341(h)(3) (eff. May 25, 2018)), (2) the plaintiff does not present cohesive arguments (see *Obert v. Saville*, 253 Ill. App. 3d

14

677, 682 (1993)), (3) his statement of facts does not cite to the record on appeal (see Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018)), and (4) his "issues presented for review" does not properly frame the legal issues presented on appeal (see Ill. S. Ct. R. 341(h)(3) (eff. May 25, 2018)). The City also argues that the plaintiff has attached extraneous exhibits to his brief which were irrelevant and not considered by the trial court and that those documents should be stricken.

¶ 31 We agree with the City that the plaintiff's brief does not meet the criteria set forth in Rule 341(h). The plaintiff's statement of facts lacks any citation to the record on appeal. The plaintiff also fails to cite any pertinent legal authority to support his arguments on appeal. A reviewing court is entitled to the benefit of clearly defined issues with pertinent authority cited and a cohesive legal argument. *Obert*, 253 Ill. App. 3d at 682. "The appellate court is not a depository in which an appellant may dump the entire matter of argument and research." *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11. Arguments that are not supported by citations to authority do not meet the requirements of Rule 341(h)(7) and are procedurally defaulted. *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5. *Pro se* litigants are not excused from following the rules that dictate the form and content of appellate briefs. *In re Marriage of Barile*, 385 Ill. App. 3d 752, 757 (2008). Adherence to Rule 341 is not an inconsequential matter, and where an appellant's brief fails to comply, this court has authority to dismiss the appeal for noncompliance with its rules. *Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 292-93 (1991).

15

¶ 32    However, even though the plaintiff's *pro se* brief does not comply with Rule 341, we may still consider the appeal "so long as we understand the issue [the party] intends to raise and especially where the court has the benefit of a cogent brief of the other party." *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Because the plaintiff's brief here makes clear some of the issues that he intends to raise on appeal, and our review is facilitated by a cogent brief of the City, we choose to reach the merits. In making a decision on the merits, we want to make clear that we will not consider any documents that are included in the plaintiff's appendix but were not part of the record on appeal.

¶ 33    Now, we turn to the merits of the plaintiff's appeal. The plaintiff first contends that the trial court erred in dismissing his claim for *mandamus* where he is only asking the City to perform duties that it performs on a daily basis and has previously performed numerous times with regard to his property. The plaintiff next argues that the court erred in dismissing his regulatory takings claim where the City's conduct has denied him the use of his land.

¶ 34    As set out above, the case was decided on the City's motion to dismiss filed pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). Section 2-619.1 of the Code permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses. *Id*. When ruling on a motion to dismiss under either section 2-615 or section 2-619, the court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences from those facts in favor of the nonmoving

16

party.  *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003).  Our review of motions to dismiss brought under both sections 2-615 and 2-619 is *de novo*.  *Id*.

¶ 35    *Mandamus* relief is an extraordinary remedy that is used to compel a public officer or body to perform a nondiscretionary (mandatory) official duty.  *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17.  To obtain *mandamus* relief, a plaintiff must establish the following three elements: (1) a clear right to the relief requested, (2) the public officer has a clear duty to act, and (3) the public officer has clear authority to comply with an order granting *mandamus* relief.  *Id*.  However, *mandamus* may not be used to compel a public officer to perform an act that involves the exercise of the public officer's discretion.  *Id*.  In a *mandamus* proceeding, no rights can be acquired as the purpose of a *mandamus* is only to enforce rights already lawfully vested.  *Saline Branch Drainage District v. Urbana-Champaign Sanitary District*, 395 Ill. 26, 37 (1946).

¶ 36    Here, based on the allegations contained in the plaintiff's third amended complaint, we agree with the trial court that the plaintiff has no current lawfully vested right which can be enforced through a *mandamus* order.  The plaintiff sought a *mandamus* directing the City to abide by its City Code and allow him to develop his property in accordance with that code.  In seeking a *mandamus*, the plaintiff acknowledges that the last time that he filed a proposed plat with the City was in 2008, that there was currently no proposed plat pending with the City in regard to the development of his property, and that the City's fire chief had discretion under section 10-1-4 of the Fire Code (Alton City Code § 10-1-4 (adopted Feb. 26, 1997)) to allow variances to the water supply requirement under certain

17

circumstances. As the plaintiff currently has no pending plat before the City and seeks to compel a public official to perform an act that involves the exercise of that official's discretion, we conclude that a *mandamus* action cannot be used to compel the City to modify its code to allow the plaintiff to develop his property as previously requested.

¶ 37    The plaintiff also argues that the trial court erred in finding that he could not meet his burden for invoking the doctrine of estoppel. To invoke equitable estoppel against a municipality, a plaintiff must plead specific facts that show (1) an affirmative act by either the municipality itself or an official with express authority to bind the municipality and (2) reasonable reliance upon that act by plaintiff that induces plaintiff to detrimentally change his position. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40. First, there must be an affirmative act by a municipality that induces reliance by a private party. *Id*. ¶ 39. Second, the reliance must be detrimental and reasonable. *Id*. A plaintiff must not only have substantially changed his position, based on the affirmative act of the municipality or its officials, but also justifiably done so, based on his own inquiry into the municipal official's authority. *Id*. "When public revenues are at stake, estoppel is particularly disfavored." *Id*. ¶ 40.

¶ 38    Here, in the plaintiff's third amended complaint, he identified some previous acts by the City, such as allowing him to subdivide one or two lots and place two manufactured homes on his property, to demonstrate detrimental reliance. Specifically, he contended that since the City had previously allowed him to subdivide his property, he reasonably believed that it would grant him permission to further subdivide the property for additional manufactured homes. However, the plaintiff has failed to allege any specific facts that he

18

substantially changed his position based on the City's affirmative acts. Moreover, as the trial court noted, the plaintiff cited to a 1986 preannexation agreement (Alton Ordinance No. 5065 (approved July 9, 1986)) to justify his reliance. However, preannexation agreements only bind a municipality for at most 20 years. 65 ILCS 5/11-15.1-1 (West 2018); *id*. § 11-15.1-5. Therefore, any claim based on the preannexation agreement would be time barred. Accordingly, we conclude that the court did not err in dismissing the *mandamus* claim in the plaintiff's third amended complaint.

¶ 39    The plaintiff next argues that the trial court erred in dismissing his regulatory takings claim. Finding that the plaintiff's regulatory takings claim was factually similar to the allegations raised in his federal case, the court concluded that the claim was barred by the doctrine of *res judicata*.

¶ 40    The doctrine of *res judicata* instructs that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). *Res judicata* bars not only what was actually decided in the first action but what could have been decided in that action. *Id*. There are three requirements that must be satisfied for *res judicata* to apply: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) identical parties or their privies in both actions. *Id*. "Claim splitting, a form of *res judicata*, precludes a party from bringing a duplicative lawsuit arising from the same transaction or events underlying a previous suit by simply changing the legal theory." *Lavite v. Dunstan*, 2019 IL App (5th) 170114, ¶ 40.

19

¶ 41 The plaintiff contends that the doctrine of *res judicata* does not apply because this claim was not the same as the claim brought in federal court. Specifically, he argues that he did not bring a regulatory takings claim in federal court and instead brought an equal protection claim based on the City's unequal enforcement of its water supply requirement. However, after a careful comparison of the two claims, we find that, although the actual legal theories are different (a regulatory takings claim versus an equal protection claim), the underlying transaction or events for each of those claims are identical. The plaintiff's third amended complaint concerns the City's denial of his proposed subdivision plat based on the lack of a proper water supply to his property. A review of the district court's decision demonstrates that this was exactly the same "wrong" that he sought to challenge there. Thus, there is an unmistakable identity of claims. We conclude that the trial court did not err in finding that the plaintiff's attempted rephrasing of his previously alleged equal protection claim into a regulatory takings claim was barred under the doctrine of *res judicata*. Accordingly, we affirm the court's dismissal of his third amended complaint.

¶ 42                                    III. CONCLUSION

¶ 43 For the reasons stated, we affirm the judgment of the circuit court of Madison County dismissing the plaintiff's third amended complaint.


¶ 44 Affirmed.